# EXHIBIT "A"

**Expert Opinion Report**

**On Behalf of Plaintiffs in Adler Medical, LLC et al. v. Blaine Harrington III**

**On the Subject of Copyright Misuse Law**

**Contents**

I. Introduction .......... 2
II. The Origin and Development of Copyright Misuse Doctrine .......... 2
A. Common Origin: Copyright Misuse and Patent Misuse .......... 2
B. Divergence: The Flexible and Capacious Nature of Copyright Misuse .......... 4
III. Categories of Copyright Misuse .......... 4
A. Broad Flexible Scope .......... 4
B. Abuse of Rights and Abuse of Process .......... 5
C. Abuse of Right: Leveraging .......... 6
D. Abuse of Process: Overclaiming .......... 7
E. Specific Categories of Abuse of Process .......... 8
1. Overclaiming the Scope of the Right .......... 8
2. Overclaiming Remedies .......... 9
3. Settlement as a Business Model: Traps for the Unwary .......... 10
4. Summary .......... 15
IV. Copyright Misuse Applied to the Facts Alleged in Plaintiffs' Complaint .......... 15
A. Relevant Facts .......... 15
B. Copyright Misuse Law Applied to the Facts .......... 16
1. Overclaiming the Remedy .......... 16
2. Settlement as a Business Model .......... 21
3. Overclaiming the Remedy and Settlement as a Business Model Combined .......... 22
V. Conclusion .......... 24
Cases Cited .......... 25

## I. Introduction

The Purpose of this Report is to analyze the case law on copyright misuse in order to conclude whether the relevant facts alleged in Plaintiffs' Complaint (hereinafter, the "Complaint") would, if proven, constitute misuse of copyright that should preclude Defendant from prevailing and recovering any damages on his counterclaim for copyright infringement. The Report proceeds in three parts. First, it briefly surveys the origin and development of copyright misuse doctrine. Second, the Report analytically explains the various categories of misuse in copyright case law with an emphasis on those most relevant for the case at hand. Third, the Report applies the law, as explained, to the facts alleged in Plaintiffs' Complaint.

In preparing this Report and stating my opinion, I have studied the relevant case law, as detailed in the appended chart of cases, as well as the relevant statutory and secondary legal sources, as detailed in the footnotes. I have also reviewed the following materials from this proceeding: Plaintiffs' Complaint including its Exhibits (in particular, Defendant's settlement letter and his Draft Complaint), Defendant's Answer and Counterclaim.

## II. The Origin and Development of Copyright Misuse Doctrine

### A. Common Origin: Copyright Misuse and Patent Misuse

Copyright misuse doctrine is generally seen as having affinity to as well as roots in its older cousin patent misuse. The seminal patent misuse case is *Morton Salt Co. v. G.S. Suppiger Co.* in which the Supreme Court ruled that a patentee who licensed his patented salt depositing machine had misused his patent in the machine by tying its licensees to a requirement of exclusive use of his unpatented salt tablets.[1] The Court explained that such a use of a patent subverts the public policies underlying the grant of a patent and ruled that it renders the patent unenforceable until the abusive behavior ceases, and its consequences dissipate.[2]

While courts initially rejected a copyright doctrine equivalent to patent misuse, this approach began to change in the 1970s when several courts came to recognize the doctrine in principle, arguendo, or in dicta, often without distinguishing it clearly from the doctrine of unclean hands.[3] The watershed moment in the development of copyright misuse is the 1990 decision in *Lasercomb America, Inc. v. Reynolds*, the first major case by a circuit court to authoritatively recognize the doctrine and deny relief for copyright infringement based on it.[4] Today, copyright misuse doctrine

[1] 314 U.S. 488 (1942).

[2] Id., at 493.

[3] See e.g., Edward B. Marks Music Corp. v. Colorado Magnetics, Inc., 497 F.2d 285, 290 (10th Cir. 1974); Mitchell Bros. Film Grp. v. Cinema Adult Theater, 604 F.2d 852, 865 (5th Cir.1979); F.E.L. Publications, Ltd. v. Catholic Bishop of Chicago, 214 U.S.P.Q. 409, 413 n.9 (7th Cir. 1982).

[4] 911 F.2d 970, 972 (4th Cir. 1990).

is widely accepted and has been firmly recognized in almost all circuits.[5] While there is no decision of the Court of Appeals for the Tenth Circuit directly adopting or rejecting the doctrine,[6] district courts in this circuit have been applying it regularly as a matter of course.[7]

The heart of copyright misuse doctrine is that a copyright owner who misused the right in the course of obtaining, licensing, or enforcing it cannot enforce the copyright until such misuse is purged.[8] As such, copyright and patent misuse share several key features. First, both doctrines are rooted in a common concern about the possibility of the right owner abusing the legal power granted in a way that subverts underlying policies and public interests.[9] Second, both doctrines extend from the equitable principle that courts "may appropriately withhold their aid where the plaintiff is using the right asserted contrary to the public interest."[10] Third, the doctrines are potentially potent in rendering the intellectual property right unenforceable as long as the abuse persists. As a result, copyright misuse claims are typically raised by defendants as a defense in infringement lawsuits brought against them, but also in actions for declaratory judgment of non-infringement.[11] Fourth, despite some earlier conflicting authorities,[12] the general principle is that a party raising the defense needs not be the victim of the misuse.[13] Thus, the modern trend in copyright misuse is that "[t]o defend on misuse grounds, the alleged infringer need not be subject to the purported misuse."[14]

---

[5] See e.g. Lasercomb, 911 F.2d 970; Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 342 F.3d 191 (3rd Cir.2003); DSC Communications Corp. v. DGI Technologies, Inc., 81 F.3d 597 (5th Cir. 1996); Practice Mgmt. Info. Corp. v. AMA, 121 F.3d 516 (9th Cir.1997); Reed-Union Corp. v. Turtle Wax, 77 F.3d 909, 913 (7th Cir.1996).

[6] A dissenting opinion from the Tenth Circuit indirectly mentioned copyright misuse in 1983. See Board of Regents of University of Oklahoma v. National Collegiate Athletic Ass'n, 707 F.2d 1147, 1165 (10th Cir. 1983). An older decision in the Tenth Circuit recognized it arguendo. See Edward B. Marks Music Corp, 497 F.2d 290.

[7] See e.g. In re Independent Service Organizations Antitrust Litigation, 964 F.Supp. 1454, 1461 (D.Kan. 1997); Home Design Servs., Inc. v. B & B Custom Homes, LLC, 2008 WL 2302662, at 2 (D.Co. 2008); Energy Intelligence Grp., Inc. v. CHS McPherson Refinery, Inc., 300 F. Supp. 3d 1356, 1372 (D. Kan. 2018); Live Face On Web, LLC v. Integrity Solutions Group, Inc., 421 F.Supp.3d 1051, 1067 (D.Co. 2019).

[8] Alcatel USA, Inc. v. DGI Techs., Inc., 166 F.3d 772, 792 (5th Cir.1999), and n. 81.

[9] Lasercomb, 911 F.2d 976, (observing that "since copyright and patent law serve parallel public interests, a 'misuse' defense should apply to infringement actions brought to vindicate either right").

[10] Morton Salt, 314 U.S. 492. Quoted in Video Pipeline, 342 F.3d 204.

[11] See WILLIAM F. PATRY, PATRY ON COPYRIGHT § 10A:1 (2020).

[12] See e.g. Atari Games Corp. v. Nintendo of America Inc., 975 F.2d 832, 846 (9th Cir. 1992); Soos & Associates v. Five Guys Entrp. LLC, 425 f. Supp. 3d 1014, 1014-1015 (N.D.Ill. 2019).

[13] See e.g. Lasercomb, 911 F.2d 976 (observing that "the defense of copyright misuse is available even if the defendants themselves have not been injured by the misuse").

[14] Video Pipeline Inc., 342 F.3d 204.

B. Divergence: The Flexible and Capacious Nature of Copyright Misuse

Despite their common origin, patent misuse and copyright misuse have diverged in recent decades, specifically with respect to the range of behavior that may constitute misuse and trigger the doctrine. Early patent misuse cases were not beholden to antitrust principles and applied a broader set of policy concerns in evaluating the patentee's behavior.[15] More recently, however, both courts—the Federal Circuit in particular[16]—and Congress[17] have restricted the doctrine by hitching it more firmly to antitrust standards.[18] Copyright misuse doctrine, by contrast, has developed in a more flexible and capacious way, allowing courts to consider a far broader set of abuses and underlying copyright policies, not restricted to antitrust concerns or standards.[19]

## III. Categories of Copyright Misuse

A. Broad Flexible Scope

As explained, courts have refused to limit the reach of copyright misuse to cases involving antitrust violations or a closely related sphere of anti-competitive behavior.[20] Instead they defined the underlying concern in much broader terms. In the words of one court: "The question is not whether the copyright is being used in a manner violative of antitrust law (such as whether the licensing agreement is 'reasonable'), but whether the copyright is being used in a manner violative

---

[15] Deepa Varadarajan, *The Uses of IP Misuse*, 68 EMORY L. J. 739, 750 (2019) (Observing that "early patent misuse cases were not beholden to antitrust principles, but instead invoked broader policy concerns underlying patent law").

[16] Mallinckrodt, Inc, v. Medipart, Inc., 976 F.2d 700, 708-709 (Fed. Cir. 1992); Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1001-1002 (Fed. Cir. 1986); Va. Panel Corp. v. MAC Panel Co., 133 F.3d 860, 868 (Fed. Cir. 1997).

[17] See 35 U.S.C. § 271(d).

[18] See Varadarajan *supra* note 15, at 755-758; Christina Bohannan, *IP Misuse as Foreclosure*, 96 IOWA L. REV. 475, 487 (2011).

[19] Varadarajan *supra* note 15, at 759; Thomas F. Cotter, *Misuse*, 44 HOUS. L. REV. 901, 905 (2007).

[20] See e.g. Lasercomb, 911 F.2d 978 ("So while it is true that the attempted use of a copyright to violate antitrust law probably would give rise to a misuse of copyright defense, the converse is not necessarily true—a misuse need not be a violation of antitrust law in order to comprise an equitable defense to an infringement action"); Omega S.A. v. Costco Wholesale Corp., 776 F.3d 692, 699 (9th Cir. 2015) (The defense of copyright misuse "is not limited to discouraging anti-competitive behavior"); Practice Mgmt. Info. Corp., 121 F.3d 521; Apple Inc., 658 F.3d at 1157–58; Triad Sys. Corp. v. Se. Express Co., 64 F.3d 1330, 1337 (9th Cir.1995); Assessment Techs. of WI, LLC v. WIREdata, Inc., 350 F.3d 640, 647 (7th Cir.2003).

of the public policy embodied in the grant of a copyright."[21] Another court similarly rested the doctrine on the foundations of the constitutional policy goals of the copyright regime: "More on point, however, is the underlying policy rationale for the misuse doctrine set out in the Constitution's Copyright and Patent Clause: 'to promote the Progress of Science and useful Arts.' Const. Art. I, § 8, cl. 8; … Put simply, our Constitution emphasizes the purpose and value of copyrights and patents. Harm caused by their misuse undermines their usefulness."[22]

Given the broad sweep of public policy concerns encompassed by the doctrine, courts have recognized its flexible evolving scope, and its ongoing development and adjustment by judicial decision.[23] Courts have identified three general zones where copyright misuse defense may apply, with the third being the most open-ended and conducive of judicial, common law development:

"The defense is often applied when a defendant can prove either: (1) a violation of the antitrust laws; (2) that the copyright owner otherwise illegally extended its monopoly; or (3) that the copyright owner violated the public policies underlying the copyright laws."[24]

B. Abuse of Rights and Abuse of Process

What kind of activities are more specifically included in the three zones of copyright misuse? Given the scope and flexibility of the doctrine, copyright misuse cases tend to be fact-specific and involve a multiplicity of scenarios. Nevertheless, as with any common law doctrine, general principles and categories can be discerned behind the particularistic corpus of cases. A preliminary useful distinction is between *abuse of rights* and *abuse of process*.[25] Abuse of rights, involves situations where the owner exploits copyright's power to exclude (often referred to as a limited "monopoly" power)[26] to illegitimately gain control and exclude activities beyond the legally

---

[21] Lasercomb 911 F.2d 978. See also Alcatel USA Inc., 166 F.3d 772, 792 (explaining that copyright misuse prohibits "to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which is contrary to public policy to grant.")

[22] Video Pipeline, 342 F.3d 204.

[23] See Omega v. Costco, 776 F.3d 699 ("Copyright misuse is a judicially crafted affirmative defense to copyright infringement"); MDY indust. v. Blizzard 629 F. 3d 928, 941 (9th Cir. 2010) (Observing that "the contours of [copyright misuse] are still being defined"). See also Kathryn Judge, *Rethinking Copyright Misuse*, 57 STAN. L. REV. 901, 912-914 (2004) (Discussing the role of the lower federal courts in developing copyright misuse doctrine).

[24] Omega v. Costco, 776 F.3d 700. See also Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory, 689 F.3d 29, 65 (1st Cir.2012).

[25] See 2 PAUL GOLDSTEIN, GOLDSTEIN ON COPYRIGHT §11.6 (3d ed. 2005).

[26] In fact, what matters for purposes of copyright policy is not the disputed issue of whether copyright confers monopoly power, but rather the conferral of exclusion and pricing power, which copyright always does. See Oren Bracha & Talha Syed, *Beyond the Incentive-Access Paradigm? Product Differentiation & Copyright Revis*ited, 92 TEX. L .REV. 1841, 1850-1854 (2014).

conferred scope.[27] Abuse of process involves situations where the owner abuses the process of enforcing the rights—judicially, administratively or through private ordering—illegitimately and in ways that violate public policy.[28] Although the distinction is not absolute and some overlap exists, analytically it helps clarify the scope and kind of activities that may constitute misuse.

C. Abuse of Right: Leveraging

Abuse of rights includes situations where the copyright owner leverages the exclusion powers conferred by copyright to gain exclusion power and control of further areas not included within the scope of the right, contrary to public policy.[29] Rights can be abused either through licensing or through enforcement. In the former, forward-looking case, the owner conditions permission to engage in activities that fall within the right on further illegitimate restrictions of other activities not within the scope of the right. In the latter case, the owner engages in ex-post enforcement of the right with respect to activities that fall within it to control activities that are not within that scope. Abuse of rights by either licensing or enforcement can be with respect to economic or non-purely economic interests. Licensing can be abused economically by permitting use of a copyrighted work only on the condition that the licensee refrains from activities that are not within the exclusive control of the copyright owner, such as developing competing independent works, use of non-protectable factual or functional information, or fair use of the work.[30] Similarly ex-post enforcement can be used to obtain control of areas and activities not covered by copyright,

[27] See Goldstein *supra* note 25, at §11.6.1.

[28] *Id.*, at §11.6.2.

[29] See e.g. A&M Records, Inc. v. Napster, Inc. F.3d 1004, 1026 (9th Cir. 2001) ("The misuse defense prevents copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly.")

[30] See Lasercomb, 911 F.2d 970 (Licensing agreement of a copyrighted software that forbade licensees from developing their own, independent, competing software); Service & Training, Inc. v. Data General Corp., 963 F.2d 680 (4th Cir. 1992) (Alleged misuse of copyright by conditioning the licensing of computer programs on defendant's use of plaintiff's computer repair services); Practice Management Information Corp. U.S.P.Q. 2nd 1611 (9th Cir. 1997) (Conditioning of the licensing of medical procedure coding system on a promise not to use any competing system); Assessment Techs., 330 F.3d 647 (a licensing agreement for a tax assessment software prohibiting use of raw data); Alcatel USA Inc., 166 F. 3d 777 (Licensing agreement conditioning use of software on use only with licensor's hardware switching cards"); Davidson and Associates v. Internet Gateway 334 F. Supp. 2d 1164 (E.D.Mo. 2004) (refusing for procedural reasons to consider a copyright misuse doctrine where plaintiff was suing for breach of contract when software license prohibited reverse engineering of the software). The Copyright Act permits fair use of copyrighted works. See 17 U.S.C. §107. The Copyright Act also provides that copyright protection does not extend, among other things, to facts or to functional subject matter, such as a technological design or a utilitarian method. See 17 U.S.C. §102(b) (Providing that ""In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery").

such as the use of functional subject matter.[31] Licensing can also be used abusively to exclude others on the basis of non-purely economic interests, as in a case where a copyright owner conditions permission to use copyrighted material on a licensee's promise to refrain from publishing any criticism.[32] And such illegitimate control going beyond economic interest can be obtained by ex-post enforcement, as in the case of a copyright owner who brings a copyright infringement action to suppress undesired representation of the copyright owner in a biography.[33]

D. Abuse of Process: Overclaiming

Abuse of process refers to misuse of the procedures related to registering, managing, or enforcing copyright to obtain illegitimate ends.[34] Such abuse involves more indirect manipulation of management or enforcement processes that typically results in overclaiming, namely, *de facto* extension of copyright exclusionary power beyond its legal scope.[35] Often the abuse of procedure will involve misrepresentation of information.

---

[31] See Omega v. Costco, 776 F.3d 700 (concurring opinion analyzing as copyright misuse the using of a copyright infringement lawsuit over an engraved symbol to control the secondary market for watches); qad. Inc. v. ALN Associates, Inc., 770 F. Supp. 1261, 1267 (N.D.Ill. 1991) (when a party "used its copyright to sue [another] and to restrain it from the use of material over which [it] itself had no rights. That is a misuse of both the judicial process and the copyright laws.") See 17 U.S.C. §102(b) that denies copyright protection to functional, as well as other, subject matter.

[32] See Video Pipeline, Inc., 342 F.3d 191; Ty, Inc. v. Publications Intern. Ltd, Ty, Inc. v. Publications Intern. Ltd., 292 F. 3d 512, 520 (7th Cir. 2002) (suggesting that conditioning a license to use copyrighted material on a veto right by the licensor on any published content may constitute misuse).

[33] Rosemont Enterprises, Inc. v. Random House, 366 F.2d 303, 313 (2nd Cir. 1966) (explaining that suing for copyright infringement and asking injunctive relief "not with a desire to protect the value of the original writing but to suppress" a biography bars the lawsuit due to unclean hands—the predecessor of the copyright misuse doctrine). Goldstein suggests that copyright misuse is superior to fair use in such situations of abusive use of the right with public interest implications because it focuses on the illegitimate behavior of the owner rather than on the behavior of the defendant. See Goldstein *supra* note 25, at §11.6.1.

[34] See e.g. Religious Tech. Ctr. v. Lerma, 1996 WL 633131, at 12 (E.D.Va. 1996) (discussing cases where "the misuse concerns the wrongful use of the copyright powers themselves in ways violative of the Constitution or public policy" and "the plaintiff is asserting its copyrights in an improper or offensive manner not intended by the copyright laws").

[35] The main difference between leveraging and overclaiming is that in the latter the overbroad control beyond the legitimate exclusive scope of copyright is achieved *de facto*, not through the direct legal power of a license, a court decision or settlement, but more indirectly, such as by misrepresenting relevant information.

E. Specific Categories of Abuse of Process

In the developing case law in this area, which is currently mainly the province of district court decisions, one can find the following, non-exhaustive categories of abuse of process. Each or a combination of some may be the basis of finding misuse.

1. Overclaiming the Scope of the Right

The most common category is that of abusing the process in a way that leads to overclaiming the scope of the right, namely de facto control and exclusion with respect to activities that are not within copyrights' exclusionary rights. This is the equivalent of leveraging copyright to exclude beyond its legal scope through licensing or litigation under abuse of rights. The difference is that overclaiming is achieved de facto through indirect means of manipulating the enforcement, registration or private ordering process. Such indirect means may include withholding information that reflects on the derivative status of the work or its originality,[36] copyright warning notices that misrepresent the scope of protection,[37] or extorting settlement of clearly overbroad claims where the other party is in an inferior position to defend against threatened litigation.[38]

Overclaiming rights is the core case of abuse of process, and the underlying public policy concerns that render the relevant behavior misuse are clear. First, in these cases the owners subvert the policies of the copyright regime by extending their exclusive powers beyond those given to them. Second, copyright policies are subverted by deterring use of works for consumption or

[36] See Intl. Biotical Corp. v. Associated Mills, Inc., 239 F.Supp. 511, 514 (N.D.Ill. 1964) (Non disclosure at registration that the work was heavily based on preexisting works constitutes inequitable conduct that renders the copyright unenforceable); Vogue Ring Creations, Inc. v. Hardman 410 F. Supp. 609, 616 (D.R.I. 1976) (withholding information from the Copyright Office that may reflect on the originality of the work when registering copyright can be the basis for copyright misuse); Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.482 F.Supp. 980, 988 (S.D.N.Y. 1980) (Failure to disclose in registration to the Copyright Office the derivative status of a work that could have made it unoriginal renders the copyright unenforceable); qad. inc. v. ALN Associates, Inc., 770 F.Supp.1266 n. 14 (Observing that non-disclosure of a derivative status of a work at copyright registration, while might not by itself constitute misuse is highly suspect, and ruling that withholding the information in litigation over copying of information that the derivative status of the work placed outside the scope of copyright is misuse).

[37] See William F. Patry & Richard A. Posner, *Fair Use and Statutory Reform in the Wake of Eldred*, 92 CALIF. L. REV. 1639, 1655–1658 (2004) (surveying many examples of overclaiming copyright warning notices and concluding that "The doctrine of copyright misuse is thus applicable where litigation is threatened in an effort to extract a licensing fee or other profit when there is no reasonable basis for supposing that the threatener's copyright has been infringed").

[38] See Assessment Techs. of WI, LLC v. WIREdata, Inc., 350 F.3d 640, 647 (Observing that "for a copyright owner to use an infringement suit to obtain property protection… that copyright law clearly does not confer, hoping to force a settlement or even achieve an outright victory over an opponent that may lack the resources or the legal sophistication to resist effectively, is an abuse of process."); Oppenheimer v. Scarafile, 2022 WL 2704875, at 4 (D.S.C. 2022) (Observing that "The misuse defense may also exist if the copyright owner employs abusive litigation tactics to extract settlements").

further creation in cases where copyright law's judgment is that such uses should be allowed and encouraged. Third, copyright is abused because of the unfairness toward parties who are excluded from activities in uses in which they are legally free to engage.

2. Overclaiming Remedies

Another category of abuse involves manipulating the process, not to directly overclaim the scope of the right, but to overclaim the available remedies for its infringement. The leading precedent in this category involves a misleading copyright warning that misrepresented the extent of available remedies.[39] Why has overclaiming remedies been recognized as a form of copyright misuse? The answer is that the adverse effect on copyright policies is the same as in the case of overclaiming scope. In fact, an overclaimed remedy is an indirect form of overclaiming the right.[40] A potential user faced with an overclaimed remedy, who must decide whether to engage in an action whose permissible or infringing status is uncertain,[41] may refrain from the action due to the misrepresented heightened risk of liability.[42] This may be the case even if the action is non-

[39] Vogue Ring Creations, Inc. v. Hardman 410 F. Supp. 616 (A false and misleading copyright warning that misrepresent a discretionary remedy as mandatory and fails to mention restrictions on such a remedy can be the basis of misuse in conjunction with misrepresenting the scope of the right). See also Patry & Posner *supra* note 37, at 1659 (Arguing that "where the [copyright] warning grossly and intentionally exaggerates the copyright holder's substantive *or remedial* rights… the case for invoking the doctrine of copyright misuse seems to us compelling" [emphasis added]).

[40] See See Ben Depoorter, *Copyright Enforcement in the Digital Age: When the Remedy Is the Wrong*, 66 UCLA L. REV. 400, 440 (2019) (Explaining in analyzing empirical data on statutory damages that: "Remedy overclaiming is problematic in several ways. Bad faith claims unduly waste the time and resources of courts and defendants. Additionally, the potential for statutory damage awards may induce a risk-averse defendant to settle claims that they otherwise would resist"). See also Patry & Posner *supra* note 37, at 1659-1660 (Discussing "Vogue Ring Creations, Inc. v. Hardman, which holds that a copyright warning that exaggerates the sanctions for a copyright violation is a form of copyright misuse" as the equivalent of overclaiming rights).

[41] This is a common situation in the context of expressive works. This situation may arise, for example, when it is unclear whether a certain action constitutes fair use or not, or whether the work is in the public domain or not. See Oren Bracha & Patrick Goold, *Copyright Accidents*, 96 BOST. U. L. REV.1025, 1032-1037 (2016) (Describing the ubiquity of "copyright accidents"); PATRICK GOOLD, IP ACCIDENTS: NEGLIGENCE LIABILITY IN INTELLECTUAL PROPERTY (2022), at 12-13 (same).

[42] How an overclaimed remedy increases de facto the scope of the right can be explained in the familiar terms of Judge Learned Hand in United States v. Carroll Towing Co., 159 F.2d 169, 173 (2d. Cir. 1947). Famously, Judge Hand defined negligence in that case as occurring in cases where the burden of preventing the harm (B) is smaller than the loss from the harm (L) multiplied by the probability of the harm occurring (P). Hence $B<PL$. The same rule is also the basis of private decisions of whether to take certain precautions where the deciding party will be liable in case harm is caused. A person who is legally responsible for a harm would take a certain precaution to prevent it only when the cost for them of that precaution is smaller than the possible loss multiplied by the probability of its occurrence. This is true whether the liability is under a negligence or strict liability rule. See STEVEN SHAVELL, ECONOMIC ANALYSIS OF ACCIDENT LAW (1987), at 179-182. In the copyright context, this means that a potential user will take a precaution, including not using the work at all and avoiding risking infringement, when

infringing, which will never be tested or decided. Similarly, an individual who faces an overclaimed remedy and risk of liability may choose to settle an uncertain infringement claim rather than litigate it. In short, overclaiming remedies is another form of overclaiming rights with the same effect of subverting the balance of the copyright regime by: i. de facto extending copyright's exclusionary effect beyond the scope set by the law, and ii) creating unfairness toward those who refrain from using, or who settle claims under the shadow of an overclaimed remedy. This is exactly the effect that courts have recognized as generally giving rise to copyright misuse , namely: "The reward for the copyright holder is unduly inflated while the creativity of other individuals is potentially stifled. In short, the basic goals of copyright are undermined."[43]

3. Settlement as a Business Model: Traps for the Unwary

A recent extensive crop of misuse of process cases, involves a third category: systematic and large-scale manipulation of the litigation and/or settlement process designed to extract substantial payments from threatened alleged infringers.[44] The relevant behavior by a copyright owner is sometimes described by courts as a "business model" designed to extract maximum funds from alleged infringers, rather than legitimately exploit the copyright and protect it from infringement.[45]

---

the cost of not using is smaller than the loss from infringement multiplied by its probability. An overclaimed remedy changes this calculus by falsely changing the expected loss should the action turn out to be infringing. The upshot: users faced with a misrepresented overclaimed remedy will refrain from uses of expressive works even in circumstances where otherwise they would engage in those actions, and even when there is a high probability that the action is no infringing under copyright's balance between exclusion and access.

[43] Home Design Servs., 2005 WL 1027370, at 12 (M.D.Fla. 2005).

[44] See AF Holdings, LLC, Olivas, 2013 WL 4456643, at 3 (D.Con. 2013) (Ruling that "By alleging a pattern of unsubstantiated, virtually identical suits followed by Plaintiff's solicitation of settlement… Defendant asserts facts that may support a copyright misuse claim"); Malibu Media, LLC v. Miller, 2014 WL 2619558 at 5 (D. Col. 2014) (Refusing to strike a misuse defense based on the allegation that "Plaintiff uses the same procedures of monitoring unsuspecting members of the public, directly connecting with the individual's IP address, providing no 'cease and desist' notice, waiting until the evidence is destroyed, filing suit, and then offering to settle in exchange for dismissing the suit"); Design Basics, LLC v. Petros Homes, Inc., 240 F.Supp.3d 712, 720-721 (N.D.Oh. 2017) (Finding that a "business 'model' utilized by plaintiff—to financially incentivize employees to find alleged copyright infringements, to sue alleged infringers and to force settlements of cases by leveraging the onerous burden placed on the alleged infringers to disprove plaintiff's presumptive damages [that] has manifested itself by plaintiff's filing of over 80 similar lawsuits in 12 states" can be the basis of copyright misuse; Design Basics, LLC v. Ashford Homes, LLC, 2018 WL 66200438, at 10-11 (S.D.Oh. 2018) (Rejecting a summary judgment motion against a misuse defense based on the claim that plaintiff "had a business model built on pursuing claims against other home builders of copyright infringement"); Oppenheimer v. The ACL LLC, 504 F.Supp.3d 503, 512 (W.D.N.C. 2020) (Rejecting a summary judgment motion against a copyright misuse defense because "a reasonable jury could find Plaintiff is using copyrights to derive an income from infringement suits" rather than being engaged in legitimate licensing); Oppenheimer v. Scarafile, 2022 WL 2704875, at 4 (D.S.C. 2022).

[45] See Oppenheimer v. The ACL LLC, 504 F.Supp.3d 512.

This category is at the frontier of the developing case law and decisions are not completely uniform with respect to it.

Several courts have recognized that there may be a valid misuse defense when "a copyright owner is more focused on the business of litigation than selling a product or licensing their copyrights to third parties"[46] or when it is "using copyrights to derive an income from infringement suits."[47] Courts are particularly willing to recognize copyright misuse when the systematic extraction of funds from litigation and settlement occurs in conjunction with one of the two other categories of abuse of process (i.e. overclaiming rights or remedies).[48]

How are copyright's policies and goals subverted by a large-scale business model of litigation and settlement? As many courts recognize, simply enforcing one's valid rights is not misuse.[49] Similarly, it is not misuse to simply enforce one's rights on a large-scale in response to large-scale infringement.[50] What additional elements then may render mass enforcement of rights abusive? As the case law is still developing, it offers no clear answer. In the following two paragraphs I offer possible answers that may explain the recent willingness by courts to recognize this form of abuse.

One explanation of when abuse may be present is that when mass enforcement occurs *in conjunction with one of the two other forms of abuse of process*, it exacerbates the subversion of copyright policies for two distinct reasons. First, scale is important in itself. When an owner overclaims rights or remedies systematically across many cases, the accumulated subversion of copyright policies is aggravated. Second, scale is often what enables overclaiming. Successfully overclaiming rights or remedies usually requires some imbalance in the enforcement process

---

[46] Oppenheimer v. Scarafile, 2022 WL 2704875, at 4, quoting from Matthew Sag, *Copyright Trolling, An Empirical Study*, 100 IOWA L. REV. 1105, 1108 (2015). The court denied defendant's motion for summary judgment on this issue, finding that in light of disputes of material facts "the jury should decide why Plaintiff copyrights his work, whether Plaintiff is more focused on the business of litigation than licensing or selling his work, and whether Plaintiff employs abusive litigation tactics."

[47] Oppenheimer v. The ACL LLC, 504 F.Supp.3d 503, 512 (W.D.N.C. 2020) ("a reasonable jury could find Plaintiff is using copyrights to derive an income from infringement suits" as the basis of a valid misuse defense).

[48] See e.g., Design Basics, LLC v. Petros Homes, Inc., 240 F.Supp.3d 712, 720-721 (denying a motion to reject on summary judgment a copyright misuse claim based on combining an enforcement business model with an overclaiming of the right by basing claims on copying of non-protectable elements).

[49] See e.g., Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 454 F.Supp.2d 966, 998 (C.D. Cal. 2006) ("A plaintiff's enforcement of its copyright does not constitute copyright misuse"); Advanced Comput. Servs. of Mich., Inc. v. MAI Sys. Corp., 845 F. Supp. 356, 370 (E.D. Va. 1994) (One's "enforcement of its copyrights does not constitute copyright misuse"); Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc., 2019 WL 4647305, at 14 (S.D.Oh. 2019) ("Although a large number of actions for infringement may be relevant to determination of plaintiff's status as a copyright troll, volume alone is not dispositive").

[50] See Malibu Media, LLC v. Doe, 2014 WL 2581168, at 2 (N.D. Ill. 2014). ("[i]t is certainly true that [plaintiff] has filed a very large number of infringement suits in this district and in others. But that is what the holders of intellectual property rights do when they are faced with mass infringement").

between the parties.[51] It is exactly the economies of scale of mass enforcement, whether by amassing many cases into one action via joinders or similar devices or simply a "mass-production" streamlined enforcement and settlement mechanism, that create the imbalance.[52] An overclaiming owner who enjoys the economies of scale of mass enforcement can extort settlements from multiple alleged infringers who do not enjoy the same cost-saving advantages and therefore cannot risk the cost of defending their case. Thus, mass enforcement exacerbates overclaiming when it occurs in conjunction with it. Scale as exacerbating overclaiming explains why the cooccurrence of both constitutes a very strong case of misuse and why hardly any court has rejected the possibility of misuse in such circumstances.[53]

Is there any reason why under some circumstances enforcement and settlement, even when not accompanied by overclaiming, may be different from simply enforcing one's rights and thus abusive? The possible case is one in which the copyright owner behaves strategically by creating the risk of infringement or at least refraining from taking easy, available measures to reduce the risk of others innocently infringing. When a copyright owner is aware that the work is available to others in ways that do not warn them that copying it would be infringing and yet fails to take easy and readily available measures to rectify this situation (such as taking actions to remove the materials by enforcement against the entities who control them or by taking actions to warn the public), she is in fact creates a trap for the unwary.[54] The case is even worse when there is a firm and long pattern of failing to remove such traps for the unwary while systematically enforcing and extracting funds from those who fall into them. Copyright is, of course, a strict liability cause of

---

[51] See Patry & Posner *supra* note 37, at 1658 (Referring to "The problem of overclaiming of copyright in situations in which asymmetrical stakes discourage a legal challenge to the claim"); Assessment Techs. of WI, LLC v. WIREdata, Inc., 350 F.3d 640, 647 (Explaining that in misuse situations a copyright owner is "hoping to force a settlement or even achieve an outright victory over an opponent that may lack the resources or the legal sophistication to resist effectively").

[52] See Sag *supra* note 46, at 1115-1116 (Discussing the economies of scale in multi defendant John Doe copyright infringement lawsuits). Sag discusses the economies of scale enjoyed by copyright owners and the resultant imbalance in enforcement in the particular case of a specific model of mass enforcement: joint lawsuits against a massive number of defendants whose identity is initially unknown. The point, however, extends to other contexts: economies of scale and a streamlined mass enforcement model significantly save enforcement cost to plaintiffs, which creates the imbalance in the enforcement process that could be used for effective overclaiming. See also McDermott v. Monday, Monday, LLC, 2018 WL 5312903, at 3 (S.D.N.Y. 2018) (Rejecting a narrow definition of a "copyright troll" as limited to "multi defendant John Doe litigation" and defining it as "seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim").

[53] The one possible exception is the outlier case of Design Basics, LLC v. Forrester Wehrle Homes, Inc., 380 F.Supp.3d 692 (N.D.Oh. 2019). See discussion *infra* text accompanying notes 61-63.

[54] See Star Fabrics, Inc. v. Target Corp., 2011 WL 4434221, at 4 (C.D. Cal. 2011) (Finding "plausible to some degree" a claim of copyright misuse where an owner "intentionally subverts its own copyright in an attempt to ensnare innocent infringers." In that case the defense was based on the argument that plaintiff "created a 'cottage industry' of filing infringement lawsuits" by distributing its copyrighted designs to foreign factories with the knowledge that they will impermissibly disseminate the design and cause customers to further infringe. The court rejected the defense because it found that the plaintiff had no knowledge of and contact with the foreign factories and otherwise took measures to protect its copyright).

action.[55] It doesn't require intention, knowledge or even negligence to infringe.[56] Nevertheless, copyright law has indirect mechanisms that encourage copyright owners to take measures to reduce the chance of infringement, espcially innocent infringement, when such means are relatively easy and reasonably available to them.[57] The recent willingness by some courts to recognize as abusive an enforcement business model under those circumstances when it turns from simply large-scale enforcement to a source of income based on traps for the unwary, possibly even in the absence of overclaiming, can be seen as another instance of the law encouraging owners to take preventive measures.[58] At a minimum, it is a case of the law discouraging owners from systematically profiting from perpetuating such traps.

Some courts have been more skeptical about recognizing an enforcement-based business model as a ground for copyright misuse. In a recent opinion, the Fifth Circuit has favorably commented on a rejection of a misuse defense (referring to it as an "unclean hands" defense) based on a claim that plaintiff "pursued a litigious business strategy." It did so in a short footnote that distinguished a previous decision by observing that: "In Petros Homes, the district court did note defendants' complaint that plaintiffs used a litigious business model, but only in connection with defendants' core allegation that plaintiffs were misrepresenting the scope of their rights."[59] The Fifth Circuit's footnote (with respect to an issue not directly on appeal before it), then, did not preclude the possibility of misuse based on a litigious business model *when it is coupled with overclaiming*. The same is true of other cases that rejected copyright misuse defenses based on litigations as a business model standing alone.[60]

---

[55] See Goldstein supra note 25, at §7.

[56] Id.; Buck v. Jewell-La Salle Realty Co., 283 U.S. 191 (1931); De Acosta v. Brown, 146 F.2d 408, 411 (2nd Cir. 1944).

[57] The two main statutory examples of such mechanisms are: a) 17 U.S.C. §412 that removes the remedies of statutory damages and attorney fees for infringement occurring prior to the effective date of registration of the work, and; b) 17 U.S.C. §401(d) that prevents defendants from arguing innocent infringement in mitigation of actual or statutory damages when notice was present.

[58] Freeplay Music, LLC v. Dave Arbogast Buick-GMC Inc., 2019 WL 4647305 (S.D.Oh. 2019) is particularly useful in distinguishing between cases of legitimate mass enforcement and abusive employment of copyright enforcement as a business model. The court in *Freeplay* rejected a copyright misuse defense asserted against a copyright owner who allegedly filed 40 infringement lawsuits. It observed that "Standing alone, initiating multiple copyright infringement actions and attempts to negotiate settlements does not indicate copyright misuse or copyright trolling" and identified the distinguishing factor as "abusive litigation tactics to extract settlements." *Id.,* at 13-14. The court further observed that "Although a large number of actions for infringement may be relevant to determination of a plaintiff's status as a copyright troll, volume alone is not dispositive." *Id.,* at 14. What distinguishes mere volume from abuse of litigation and settlement is exactly exploiting traps for the unwary to extract unreasonable settlement awards due to asymmetries in litigation cost.

[59] Energy Intelligence Group, Incorporated v. Kayne Anderson Capital Advisors, L.P., 948 F.3d 261, 281, n.4 (5th Cir. 2020).

[60] See Energy Intelligence Group, Inc. v. CHS McPherson Refinery, Inc., 300 F.Supp.3d 1356, 1373-74 (D.Kan. 2018) (Rejecting a misuse defense based on litigation and settlement as a business model and

An even more sweeping rejection can be found in an outlier 2019 case by an Ohio district court.[61] That decision rejected a misuse defense based on a claim that plaintiff's "model is primarily to profit from copyright litigation." The court rejected the misuse defense that was argued *in conjunction with an argument of overclaiming*. Its reasoning was that the overclaiming argument was redundant and duplicative of the argument also raised in the litigation that the elements copied from plaintiff's work were not protectable.[62] The court also expressed concern that allowing evidence of plaintiff's litigation history, relevant for the business model claim, would cause "undue prejudice, confusing and misleading the jury, and needlessly prolonging the trial."[63] This reasoning is not only not in line with the few other decisions that rejected a business-model-based misuse claims, it is also founded on a clearly flawed logic. The first reason that a misuse argument based on overclaiming is duplicative of a non-infringement argument pulls the rug from under the entire doctrine of copyright misuse. It also ignores the different legal consequences of misuse compared to non-infringement (i.e., rendering the copyright generally unenforceable until the misuse is purged) and the broader public-interest it serves in general deterrence against misbehavior beyond the dispute between the two parties. The second concern of prejudicing juries,

---

distinguishing previous cases on the ground that there overclaiming was argued in conjunction with the business model); Freeplay Music, LLC, 2019 WL 4647305, at 14 (Observing that "a large number of actions for infringement may be relevant" although "volume alone is not dispositive" and distinguishing other business model misuse cases on the ground that there plaintiffs "employed unorthodox litigation tactics or made material misstatements in an effort to intimidate"); O'Neil v. Ratajkowski, 563 F. Supp. 3d 112, 135-136 (S.D.N.Y. 2021) (Rejecting a copyright misuse and unclean hands defenses based on allegations of asserting "statutory damages disproportionate to the cost of litigation and "counsel's track record of launching full scale and excessive litigation merely to extort exorbitant settlements over negligible infringement," and distinguishing previous cases because there the element was present of "'an attempt to use the copyright monopoly to control something the monopoly does not protect'"). Other decisions rejected invocations of the *unclean hands* defense based on an abusive pattern of enforcement as a business model because such alleged misconduct was not related to the specific dispute before the court. See Malibu Media, LLC v. Lee, 2013 WL 2252650 at 9 (D.N.J. 2013); Purzel Video GmbH v. Smoak, 11 F.Supp.3d 1020, 1030 (D. Col. 2014). This reasoning and the decisions based on it are irrelevant for the legal analysis of *copyright misuse* as opposed to *unclean hands* defense arguments. Whatever the rule is with respect to unclean hands, the firm rule in modern case law is that to be successful in asserting a misuse defense, a defendant is not required to be the victim of the misuse. See Lasercomb, 911 F.2d 976 (Observing that "the defense of copyright misuse is available even if the defendants themselves have not been injured by the misuse"). Thus, with respect to copyright misuse a requirement of direct relevance of the misuse to the specific dispute in the case is contrary to both established precedents and the modern rationale of the doctrine which is focused on protecting against subversion of public-interest copyright policies.

[61] Design Basics, LLC v. Forrester Wehrle Homes, Inc., 380 F.Supp.3d 692 (N.D.Oh. 2019).

[62] Id., at 709-710.

[63] Id., at 710.

while perhaps not baseless, seems insufficient to justify excluding evidence of a pattern of behavior by a copyright owner when it is *relevant* for a genuine issue of misuse.[64]

4. Summary

To summarize, there are three categories in the case law of abuse of process that may constitute copyright misuse. The core category is that of overclaiming the right. These are cases in which owners abuse the enforcement or management process to gain control over territory which is not within their exclusive rights. Such abuse subverts the copyright balance between exclusion and access, discourages conduct that is allowed or even desired, and is unfair to users. The second category of abusing the enforcement process by overclaiming the remedy is an extension of the first. An inflated remedy results in unfair ex post overcompensation and ex ante overdeterrence, constituting de facto overclaiming. The third category of abuse of process by using mass enforcement as a business model is the newest and its exact scope is a matter of some non-uniformity in the case law. Numerous courts have recognized such behavior as a possible ground for a misuse defense. A few others, including dicta from the Fifth Circuit, have expressed reservations. However, with the exception of an outlier district court decision based on questionable reasoning, even the skeptical decisions did not preclude the possibility of enforcement as a business model being a partial ground for finding misuse when coupled with behavior that falls within the two other categories of overclaiming the right or the remedy.

## IV. Copyright Misuse Applied to the Facts Alleged in Plaintiffs' Complaint

This part applies copyright misuse law as surveyed above to the facts of this case, on the assumption that the version of the facts as argued in the Complaint is established. I briefly summarize only the key facts relevant for the copyright misuse analysis.

A. Relevant Facts

The key facts, as argued in the Complaint, which are relevant for applying copyright misuse law are:

- Defendant pursued a business model by which he has knowingly allowed his photographs to be available to the public on third-party websites without providing notice that he claims to be the author or copyright owner of those photographs.
- This was done intentionally as to not inform members of the public of his claim of ownership.

---

[64] See AF Holdings, LLC, Olivas, 2013 WL 4456643, at 4 (D.Con. 2013) (Ruling that "the extent of Plaintiff's previous litigation and the form of its previous complaints may be relevant and related" to a copyright misuse claim before the court).

- Defendant then monitored public access to the websites to identify persons who downloaded the images of his photographs and searched the web to determine if such persons used the images.
- Upon learning of relevant persons who downloaded the work, Defendant threaten to sue the persons unless they paid him an exorbitant amount, given the market value of the images.
- In the case such persons refuse to pay, Defendant regularly files suit for copyright infringement against those persons in federal courts throughout the United States.
- Defendant has threatened hundreds of such persons with copyright infringement lawsuits over the past several years, most of whom paid the demanded settlement amount, which was far beyond the fair value of the use.
- Defendant has filed copyright infringement lawsuits against individuals who declined to settle in at least 75 instances.
- The costs of defense in litigation of the infringement claims made by Defendant would considerably exceed the settlement amount demanded, whether such claims are valid or not.
- Plaintiffs or individuals acting on their behalf found images of Defendant's photographs on various websites. The website did not identify the Defendant as the author or owner of copyright in the images.
- Plaintiffs received identical letters from Copy Cat Legal asserting that the showing of the image on their website infringes Defendant's copyright and demanding that Plaintiffs pay $30,000 or face an infringement lawsuit in which Defendant seeks to recover $150,000, as appears in the letter and a draft complaint attached to it (Exhibit A to the Complaint).
- Defendant has long been aware that the images were available on the websites from which they were downloaded with no notice of authorship or ownership and for years took no action to have them removed.
- Plaintiffs were unaware of any claim of copyright ownership in the images, had no reasonable way of having such knowledge, and expeditiously removed the images form their website upon receiving notice from Defendant.

B. Copyright Misuse Law Applied to the Facts

Applying copyright misuse law to facts such as those summarized above would result in the conclusion that Defendant's actions constitute copyright misuse on three grounds: overclaiming the remedy, abusive enforcement as a business model by taking advantage of traps for the unwary, and the conjunction of the two.

1. Overclaiming the Remedy

Defendant engaged in misuse of copyright by overclaiming the remedy, both directly and by systematic misrepresentation of pertinent information. The Copyright Act gives plaintiffs who

are successful in establishing copyright infringement the option to elect statutory damages as their remedy.[65] Statutory damages can be awarded without establishing the actual damage caused by the infringement, in an amount set by the court within three possible ranges:[66]

a. A default range of $750-$30,000 for all infringements associated with one work.
b. An elevated cap range of $750-$150,000 for all infringements associated with one work when plaintiff establishes that the infringement was willful.
c. A range with a reduced floor of $200-$30,000 for all infringements associated with one work when defendant establishes that the infringement was innocent.

*i. Direct Overclaiming*

Defendant's settlement demand of $30,000 directly overclaimed the remedy because the chances of being awarded in litigation this sum, which is the maximum default range amount, were infinitesimally small, as a reasonable person (espcially one being aided by professional legal advice) should have known.

First, Plaintiffs' actions are not the kind that render the alleged infringement willful, thereby supporting a case for an award within the elevated statutory cap. Contrary to the misleading contention in Defendant's Draft Complaint that was attached to the Copy Cat letter,[67] simply downloading a digital image from a publicly available internet website where it is freely available without any warning or indication of ownership does not in itself raises a red flag that the action is infringing, thereby rendering the behavior willful. Willfulness requires a higher level of awareness or warning that the action is infringing.[68]

---

[65] 17 U.S.C. §504(c).

[66] *Id.*

[67] Defendant's Draft Complaint (hereinafter "Draft Complaint"), at 6 Count 26 (Arguing that "Defendant's infringement was willful as it acted with actual knowledge or reckless disregard for whether its conduct infringed upon Plaintiff's copyright").

[68] Willfulness for purpose of copyright's statutory damages requires either actual knowledge or the high standard of recklessness. It cannot be established by proving mere negligence. See Erickson Prods. Inc. v. Kast, 921 F.3d 822, 833 (9th Cir. 2019) (ruling that willfulness requires "actual knowledge, willful blindness, or recklessness"). Plaintiffs had no knowledge of the infringement. Even if their behavior was negligent, which is doubtful, nothing in the circumstances gives rise to the inference of recklessness or willful blindness under the factors employed by courts to determine the existence of this state of mind. See Agence France Presse v. Morel, 934 F. Supp. 2d 547, 570 (S.D.N.Y. 2013) (Explaining that "In evaluating the infringer's state of mind, courts have looked to factors including 'whether the infringer was on notice that the copyrighted work was protected; whether the infringer had received warnings of the infringements; [and] whether the infringer had experience with previous copyright ownership, prior lawsuits regarding similar practices, or work in an industry where copyright is prevalent'"). In our case Plaintiffs downloaded the images from a third-party website where they were freely available with no warning, notice or indication of authorship, and had no particular training and immersion in the law, practice or business of copyright. See e.g., Stross v. Smith Rock Masonry Co., LLC, 2021 WL 2453388, at 2 (D. Or. 2021) (Refusing to find the infringement by defendant who posted plaintiff's photograph on his website willful when plaintiff did not establish any additional facts "indicating that defendant was or

Second, the fact that the image did not have a copyright notice attached to it, nor any accompanying information about authorship or ownership together with the expeditious removal by Plaintiffs once notice was received, create a reasonable case for the infringement being innocent,[69] thereby militating for an award on the lower side of the statutory range including a decreased minimum of $200. A reasonable person aided by professional legal advice should have known that there was a reasonable case for a valid claim of innocent infringement by Plaintiffs.

Finally, even if the amount of statutory damages were to be determined within the default bracket, it is extremely unlikely that Defendant would have been awarded the maximal amount within this range, as his letter demands. Courts have a wide discretion in determining the amount of statutory damages,[70] a discretion which they exercise by weighing relevant factors. The list of factors, which varies somewhat, was described by one commentator as:

"[C]ourts may consider, among other factors, the expenses saved and the profits earned by the defendant, the revenues lost by the plaintiff, the deterrent effect on the defendant and third parties, the defendant's cooperation in providing evidence concerning the value of the infringing material, and the conduct and attitude of the parties."[71]

District courts in the Tenth Circuit have been referring to similar versions of the list:

"Some of the factors which a court may consider in determining the amount of statutory damages include the expenses saved by the defendants in connection with the infringements, the revenues lost by plaintiff as a result of defendants' conduct, the infringer's state of mind, and wrongfully acquired gains or unjust enrichment of the defendants."[72]

Under any version, an overwhelming balance of the factors in our case militate for a lower amount within the default range of recoverable damages, while none militates for a high amount:

---

should have been aware of any copyright, nor that defendant continued to infringe on the copyright after being notified of it"); Bell v. Turentine, 2019 WL 1243075, at 2 (S.D. Ind. 2019) (Ruling that plaintiff has not sustained his burden to establish willfulness when the only facts pled were that defendant downloaded the copyrighted image from the Internet, where it resided without a watermark or other identifying mark, and then uploaded it to his own website).

[69] The standard for innocent infringement under 17 U.S.C. §504(c)(2) is that the defendant "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright." See also 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 14.04[B][2][a] (2019) (Explaining that "a defendant is entitled to the reduced minimum if he proves not only that his infringing conduct was made in a good faith belief of the innocence of his conduct, but also that he was reasonable in holding that good faith belief"); Childress v. Taylor, 798 F. Supp. 981, 994 (S.D.N.Y. 1992) (observing that "an infringer must meet a two-pronged burden of proof to establish innocence: (1) a subjective good faith… which was (2) objectively reasonable under the circumstances").

[70] F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 231 (1952); Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir. 1984).

[71] See Patry *supra* note 11, at 22:174. See also National Football League v. PrimeTime 24 Joint Venture, 131 F. Supp. 2d 458, 473–474 (S.D. N.Y. 2001).

[72] Schmidt v. Holy Cross Cemetery, Inc.,840 F.Supp. 829, 835 (D.C.Ka. 1993).

the market value of the use and thus both the benefit to Plaintiffs and the harm to Defendant falls far short of the demanded $30,000; Plaintiffs acted non-willfully, possibly innocently, and certainly inadvertently; and Defendant acted with indifference (at best) with respect to the ongoing availability of his images free from warning or relevant information. Again, the conclusion that follows is that a reasonable person aided by professional legal advice should have known that the chances for recovering the maximal amount of statutory damages within the default range (the $30,000 demanded by Defendant) were virtually non-existent.[73]

In sum, in its settlement ultimatum letter, Defendant directly overclaimed the remedy substantially by demanding the maximal default-range statutory damages amount of $30,000, under circumstances where there was no willful infringement, a reasonable case for innocent infringement, and a litany of specific factual factors militating for a low amount of damages, all foreseeable to a reasonable person aided by legal advice. The reason why such obvious overclaiming was expected to be effective is exactly the concern animating misuse doctrine, namely: the alleged fact that "the costs of defense of such claims, whether or not they are valid, would considerably exceed the cost of tribute demanded."[74]

*ii. Overclaiming by Misrepresentation*

Separately, under the alleged facts, Defendant overclaimed the remedy by misrepresenting the amount available to him. The misrepresentation consisted not of outright lies, but of misleading half truths. Specifically, Defendant misleadingly misrepresented three related matters: the statutory scheme *as applied to the case*, references to supposedly relevant cases, and an ineffective and deceptive disclaimer.

First, Defendant's letter states that: "Further, if the infringement was committed 'willfully' the court may increase the amount of statutory damages (for **each work that was infringed**) to sum of not more than $150,000." Read in context by a reasonable person, this observation is a direct implication that there is a realistic chance that should litigation ensue, Plaintiffs may be forced to pay statutory damages in the elevated range of up to $150,000. Plaintiffs were not expected to be

[73] As explained, statutory damages awards are case-specific and discretionary within the relevant ranges. Nevertheless some idea of how disproportionately overclaimed the remedy sought in Defendant's letter is can be gained from amounts granted by courts under similar factual circumstances, including when behavior by infringers was found to be *willful*. See e.g. Prokos v. Covered Wagon Investments, Inc., 2020 WL 1433132, at 5 (C.D. Cal. 2020) (Awarding $750 for *willful* infringement by posting plaintiff's photograph on defendant's website); Salyer v. Hotels.Com GP, LLC, 2015 WL 3893079, at 2 (W.D. Wash. 2015) (awarding $3,000 for *willful* infringement by posting plaintiff's photograph on defendant's website); Durant v. REP Publishing, Inc., 2018 WL 6137156 (C.D.Cal. 2018) (Awarding $750 each for two photographs posted on defendant's website, where infringement was deemed *willful*). Stross v. Smith Rock Masonry Co., LLC, 2021 WL 2453388, t 4 (D. Or. 2021) (awarding $1,500 for non-willful infringement by posting plaintiff's photograph on a website). Thus, Defendant's letter overclaims the three awards in *willful* infringement cases by a factor of 10-40.

[74] Complaint, at 5. See Assessment Techs. of WI, LLC v. WIREdata, Inc., 350 F.3d 647 (Explaining that in misuse situations a copyright owner is "hoping to force a settlement or even achieve an outright victory over an opponent that may lack the resources or the legal sophistication to resist effectively").

interested in a theoretical education on statutory damages, but rather in the consequences of that law as applied to their case and as reflecting on their monetary risk in litigation and decision to pay the demanded settlement amount. That the assertion of the higher range was not to be understood as strictly theoretical education, is confirmed by the fact that the draft complaint attached to Defendant's letter indeed argues that the infringement was willful and "demands… an award of statutory damages for willful infringement of up to $150,000."[75] However, as applied to the case, the claim that if the infringement was willful a court may increase the amount up to $150,000 is highly misleading. It implies that there is a reasonable risk for Plaintiffs of such increase, while in fact, as explained above, a finding of willful infringement in this case is not within the realm of possibilities, as a reasonable person should have known.

Second, Defendant's letter refers the recipients to three district courts' decisions in the Tenth Circuit involving damage awards, ostensibly to provide relevant information. In fact, the referred cases are carefully selected to intimidate by projecting on Plaintiffs' cases irrelevant award amounts, many times the magnitude that could reasonably be expected in this case. Specifically:

Defendant's letter fails to mention that the statutory damages award of $240,000 for infringing copyright in 8 images in *Stockart.com LLC v. Engle*[76] was for *willful infringement*. The court there found that the amount of $30,000 per work, it estimated to be triple the market value of the use, correctly balanced the statutory damages considerations where infringement was willful.[77] In his letter, however, Defendant demands the same amount in thoroughly different circumstances where, as explained, a finding of willful infringement was not a realistic possibility.

In *Shive v. J&C Baseball Clubhouse Inc.* the award of $150,000 was again for *willful* infringement of a copyright in a photograph, under thoroughly different circumstances and a default judgment against defendant,[78] which, again, Defendant's letter fails to mention.

The $262,197 award in *Live Face On Web LLC v. Integrity Sols. Grp. Inc.*[79] was *actual not statutory* damages awarded in a software copyright case. The only possible purpose of referring to this irrelevant case in our context is to flaunt a large number to intimidate and confuse recipients not well versed in the technicalities of copyright damages law.

Third, the letter's disclaimer that "the facts of these cases may be different than those here (thus militating in favor of a higher or lower award here)" is ineffective in remedying the misleading information. In fact, it execrates the misrepresentation by adding yet another misleading assertion. Generically observing that specific facts of cases may differ resulting in different awards, simply does not remove the misleading effect of systematically referencing as relevant a group of cases all of which state extremely high amounts stemming from facts

---

[75] Draft Complaint, at 6-7.

[76] 2011 WL 10894610 (D. Col. 2011).

[77] Id., at 14.

[78] 2018 WL 1801278, at 1 (D.N.M. 2018).

[79] 421 F. Supp 3d 1051 (D.Col. 2019).

fundamentally different from the case at hand and being grossly disproportionate to the damages amount that could be expected in this case. Moreover, the disclaimer affirmatively deepens the misrepresentation by making it explicit. The ostensibly evenhanded claim that the different facts of the case at hand may militate for a higher award relative to the cases cited just as they may militate for a lower one is simply false. There is *no realistic possibility* of a higher award in the case at hand. Relative to *Live Face On Web* a higher award is a legal impossibility (an award higher than the maximum amount of statutory damages for willful infringement and much higher than the actual damage in this case). Relative to *Shive* (maximal statutory damages for willful infringement) a higher award in this case is a fantastical scenario. And relative to *Stocakart.com* (triple the value of a much higher value use where infringement was willful) it is an extreme unlikelihood.

Defendant's systematic misrepresentation of information is an instance of a well documented phenomenon in the practice of statutory damages, known as "anchoring."[80] Copyright owners in such cases tend to present unrealistically high damages amounts with little grounding in the facts to achieve a framing effect in litigation or settlement. By initially demanding unrealistic, high amounts, copyright owners make the lower amount eventually claimed or settled on appear to be a reasonable middle ground. In the case at hand, the grossly disproportionate amounts presented through misleading information about both the statutory scheme as applied to the case and supposedly relevant cases, were clearly an anchor designed to frame the claimed settlement amount—itself unrealistically high—as reasonable and intimidate the Plaintiffs.[81] Put differently, it is a case of abuse of process by way of misrepresenting information in order to overclaim the remedy.[82]

2. Settlement as a Business Model

The alleged facts give rise to a strong case of copyright misuse via enforcement and settlement as a business model.[83] Defendant's scheme of threatening letters followed by high amount settlements is extensive in quantity, duration, and geographical coverage. According to the alleged facts, Defendant has threatened hundreds of persons with copyright infringement

---

[80] See Depoorter *supra* note 40, at 440 (explaining how baseless claims of willful infringement are used by plaintiffs to initially claim high sums of statutory damages with a dual harmful effect: "as a 'bait-and-switch' tactic: by accusing the defendant of willful infringement, a plaintiff may appear more reasonable to the court and jury when subsequently requesting regular statutory damages and may hope to obtain a higher award within the regular statutory range; and "by increasing the perceived risk to a defendant, claiming willful statutory awards might induce more generous settlement concessions than would otherwise be justified on the merits of the case and the likely outcome at trial"); Oren Bracha & Talha Syed, *The Wrongs of Copyright Statutory Damages*, 98 TEX. L. REV. 1219, 1228 (2020) (Arguing that initial overclaiming of statutory damages "strongly suggests strategic use of enhanced damages claims, either in extracting higher settlement sums from risk-averse defendants or in anchoring and ratcheting up damage awards within the normal range").

[81] See Freeplay Music, LLC, 2019 WL 4647305, at 14 (Identifying making "material misstatements in an effort to intimidate" as a ground for finding copyright misuse).

[82] See discussion of overclaiming remedies as misuse *supra* Part III(E)(2).

[83] See discussion of using copyright enforcement as a business model as misuse *supra* Part III(E)(3).

lawsuits over the past several years, most of whom paid the demanded settlement amount, which was far beyond the fair value of the use. Moreover, according to these facts, Defendant has filed copyright infringement lawsuits against individuals who declined to settle in at least 75 instances and in various jurisdictions. All of this was done through an identical, standardized scheme of monitoring, demand letters, settlements and litigation. Those are exactly the circumstance to which courts referred as a business model of profiting from enforcement and settlement, rather than a legitimate exploitation of the copyright.[84]

Moreover, the circumstances as alleged in the facts, are precisely those under which Defendant's actions cease being simply legitimate large-scale enforcement in response to mass infringement and assume the form of subverting copyright's policies. Specifically, the factual pattern is one of creating and exploiting traps for the unwary by failing to take easy precautions and then extracting funds from those who inadvertently fall into the traps and infringe. Defendant knowingly allowed his photographs to be available to the public on third-party websites with no notice of ownership or authorship or any other kind of warning. For a long period, defendant took no steps against these third-party websites. Nor did he take the easy and highly effective step of having links to his images available on third-party websites removed from image search engines. Image search engines have legal incentives to respond to such take down notices and they regularly do, as Defendant aided by legal advice must have known.[85] Moreover, according to the alleged facts "[t]his was done intentionally as to not inform members of the public of his claim of ownership." Instead, defendant monitored use of the third-party websites, waiting for others to fall into the traps that he failed to remove, and then moved to send legal letters, threatening litigation, and demanding and in many cases extracting, large settlement amounts. All of this was done systematically, on a large-scale and through a standardized scheme.

This is precisely the fact pattern that explains the recent willingness by numerous courts to recognize settlement as a business model as a ground for copyright misuse, i.e.: the subversion of copyright policies and unfairness involved with behavior which is not mere large-scale enforcement, but profiting systematically from settlements, while failing to take easily available measures to remove traps for those who inadvertently infringe.[86]

3. Overclaiming the Remedy and Settlement as a Business Model Combined

Finally, in this case, Defendant's systematic use of a settlement scheme unfolded in conjunction with overclaiming the remedy both directly and through misrepresentation of pertinent

[84] See text accompanying *supra* notes 44-48.

[85] See 17 U.S.C. §512(d) creating a safe haven from copyright liability for service providers operating information location tools and stating that one of the conditions for enjoying it is that upon obtaining knowledge or awareness of infringing activity the service provider "acts expeditiously to remove, or disable access to, the material." See also Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146 (9th Cir. 2007).

[86] See *supra* text accompanying notes 54-57.

information, as described above. These are circumstance in which even courts who are skeptical of the enforcement as a business model ground, left the door open for applying copyright misuse.[87]

Under these combined circumstances the case for copyright misuse is particularly strong. The large-scale, standardized nature of the settlement business model exacerbates the public policy concerns associated with overclaiming the remedy. First, because large scale magnifies the deleterious effect of overclaiming. And second because a large-scale, streamlined scheme creates the economies of scale and the imbalance in litigation and enforcement costs that enable overclaiming.

[87] See *supra* text accompanying note 59. Even the Fifth Circuit did not exclude the possibility of misuse when an enforcement business model is combined with overclaiming in its recent footnote in Energy Intelligence Group, Incorporated, 948 F.3d 281, n.4. Only one outlier district court decision excluded this possibility in Design Basics, LLC, 380 F.Supp.3d 692 as discussed in *supra* text accompanying notes 61-62.

## V. Conclusion

It is my conclusion that applying copyright misuse law, as surveyed and analyzed in Part III, to facts such as alleged in Plaintiffs' Complaint, results is a strong legal outcome of copyright misuse by Defendant. This conclusion follows from three recognized grounds of misuse: overclaiming the remedy, using settlements as a business model under circumstances of perpetuating traps for the unwary, and the strongest ground: the conjunction of the two others.

8/23/2022

Professor Oren Bracha
William C. Conner Chair in Law
The University of Texas School of Law
4003 Ave. B
Austin TX7751

Date

**Cases Cited**

*Supreme Court*

Buck v. Jewell-La Salle Realty Co., 283 U.S. 191 (1931)

F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228 (1952)

Morton Salt Co. v. G.S. Suppiger Co., 314 U.S. 488 (1942)

*Circuit Courts*

Alcatel USA, Inc. v. DGI Techs., Inc., 166 F.3d 772 (5th Cir.1999)

A&M Records, Inc. v. Napster, Inc. F.3d 1004 (9th Cir. 2001)

Apple Inc., 658 F.3d at 1157–58; Triad Sys. Corp. v. Se. Express Co., 64 F.3d 1330 (9th Cir.1995).

Assessment Techs. of WI, LLC v. WIREdata, Inc., 350 F.3d 640 (7th Cir.2003)

Atari Games Corp. v. Nintendo of America Inc., 975 F.2d 832 (9th Cir. 1992)

Board of Regents of University of Oklahoma v. National Collegiate Athletic Ass'n, 707 F.2d 1147 (10th Cir. 1983)

De Acosta v. Brown, 146 F.2d 408 (2nd Cir. 1944)

DSC Communications Corp. v. DGI Technologies, Inc., 81 F.3d 597 (5th Cir. 1996)

Edward B. Marks Music Corp. v. Colorado Magnetics, Inc., 497 F.2d 285 (10th Cir. 1974)

Energy Intelligence Group, Incorporated v. Kayne Anderson Capital Advisors, L.P., 948 F.3d 261 (5th Cir. 2020)

Erickson Prods. Inc. v. Kast, 921 F.3d 822 (9th Cir. 2019)

F.E.L. Publications, Ltd. v. Catholic Bishop of Chicago, 214 U.S.P.Q. 409 (7th Cir. 1982)

Harris v. Emus Records Corp., 734 F.2d 1329 (9th Cir. 1984)

Lasercomb America, Inc. v. Reynolds, 911 F.2d 970 (4th Cir. 1990)

Mallinckrodt, Inc, v. Medipart, Inc., 976 F.2d 700 (Fed. Cir. 1992)

Mitchell Bros. Film Group v. Cinema Adult Theater, 604 F.2d 852 (5th Cir.1979)

Omega S.A. v. Costco Wholesale Corp., 776 F.3d 692 (9th Cir. 2015)

Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146 (9th Cir. 2007)

Practice Mgmt. Info. Corp. v. AMA, 121 F.3d 516 (9th Cir. 1997)

Reed-Union Corp. v. Turtle Wax, 77 F.3d 909, 913 (7th Cir.1996)

Rosemont Enterprises, Inc. v. Random House, 366 F.2d 303 (2nd Cir. 1966)

Service & Training, Inc. v. Data General Corp., 963 F.2d 680 (4th Cir. 1992)

Ty, Inc. v. Publications Intern. Ltd, Ty, Inc. v. Publications Intern. Ltd., 292 F. 3d 512 (7th Cir. 2002)

Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995 (Fed. Cir. 1986)

United States v. Carroll Towing Co., 159 F.2d 169 (2d. Cir. 1947)

Va. Panel Corp. v. MAC Panel Co., 133 F.3d 860 (Fed. Cir. 1997)

Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 342 F.3d 191 (3d Cir.2003);

*District Courts*

Advanced Comput. Servs. of Mich., Inc. v. MAI Sys. Corp., 845 F. Supp. 356 (E.D. Va. 1994)

AF Holdings, LLC, Olivas, 2013 WL 4456643 (D.Con. 2013)

Agence France Presse v. Morel, 934 F. Supp. 2d 547 (S.D.N.Y. 2013)

Bell v. Turentine, 2019 WL 1243075 (S.D. Ind. 2019)

Childress v. Taylor, 798 F. Supp. 981 (S.D.N.Y. 1992)

Davidson and Associates v. Internet Gateway 334 F. Supp. 2d 1164 (E.D.Mo. 2004)

Design Basics, LLC v. Ashford Homes, LLC, 2018 WL 66200438 (S.D.Oh. 2018)

Design Basics, LLC v. Forrester Wehrle Homes, Inc., 380 F. Supp.3d 692 (N.D.Oh. 2019)

Design Basics, LLC v. Petros Homes, Inc., 240 F.Supp.3d 712, (N.D.Oh. 2017)

Durant v. REP Publishing, Inc., 2018 WL 6137156 (C.D.Cal. 2018)

Energy Intelligence Grp., Inc. v. CHS McPherson Refinery, Inc., 300 F. Supp. 3d 1356, 1372 (D. Kan. 2018).

Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc., 2019 WL 4647305 (S.D.Oh. 2019)

Harrington v. Aerogelic Ballooning, LLC, 2018 WL 8646682 (D.C.Co. 2018)

Home Design Servs., Inc. v. B & B Custom Homes, LLC, 2008 WL 2302662 (D.Co. 2008)

Home Design Services, Inc. v. Park Square Enterprises, Inc., 2005 WL 1027370 (M.D. Fa, 2005)

Hotels.Com GP, LLC, 2015 WL 3893079 (W.D. Wash. 2015)

In re Independent Service Organizations Antitrust Litigation, 964 F. Supp. 1454 (D.Kan. 1997)

International Biotical Corp. v. Associated Mills, Inc., 239 F. Supp. 511 (N.D.Ill. 1964)

Live Face On Web, LLC v. Integrity Solutions Group, Inc., 421 F.Supp.3d 1051 (D.Co. 2019)

Malibu Media, LLC v. Doe, 2014 WL 2581168 (N.D. Ill. 2014)

Malibu Media, LLC v. Lee, 2013 WL 2252650 (D.N.J. 2013)

Malibu Media, LLC v. Miller, 2014 WL 2619558 (D. Col. 2014)

McDermott v. Monday, Monday, LLC, 2018 WL 5312903 (S.D.N.Y. 2018)

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 454 F. Supp.2d 966 (C.D. Cal. 2006)

National Football League v. PrimeTime 24 Joint Venture, 131 F. Supp. 2d 458 (S.D. N.Y. 2001)

O'Neil v. Ratajkowski, 563 F. Supp. 3d 112 (S.D.N.Y. 2021)

Oppenheimer v. Scarafile, 2022 WL 2704875 (D.S.C. 2022)

Oppenheimer v. The ACL LLC, 504 F.Supp.3d 503 (W.D.N.C. 2020)

Prokos v. Covered Wagon Investments, Inc., 2020 WL 1433132 (C.D. Cal. 2020)

Purzel Video GmbH v. Smoak, 11 F.Supp.3d 1020 (D. Col. 2014)

qad. inc. v. ALN Associates, Inc., 770 F. Supp. 1261 (N.D.Ill. 1991)

Religious Tech. Ctr. v. Lerma, 1996 WL 633131 (E.D.Va. 1996)

Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.482 F. Supp. 980 (S.D.N.Y. 1980)

Schmidt v. Holy Cross Cemetery, Inc.,840 F. Supp. 829 (D.C.Ka. 1993)

Shive v. J&C Baseball Clubhouse Inc., 2018 WL 1801278 (D.N.M. 2018)

Soos & Associates v. Five Guys Entrp. LLC, 425 f. Supp 3d 1014 (N.D.Ill. 2019)

Star Fabrics, Inc. v. Target Corp., 2011 WL 4434221 (C.D. Cal. 2011)

Stockart.com LLC v. Engle, 2011 WL 10894610 (D. Col. 2011)

Stross v. Smith Rock Masonry Co., LLC, 2021 WL 2453388 (D. Or. 2021)

Vogue Ring Creations, Inc. v. Hardman 410 F. Supp. 609, (D.R.I. 1976)