JEFFREY L. SQUIRES
(NM Bar No. 143015)
SQUIRES LEGAL COUNSEL, LLC
P.O. Box 92845
Albuquerque, NM 87199
Tel: (505) 835-5500
Email: jsquires@squireslegal.com
*Attorney for Defendant*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAUREEN HARRINGTON | Case No.: 2:22-cv-08230-HDV-E |
| Plaintiff, | Next Event: August 8, 2024 |
| v. | Hearing on Plaintiff's Motion for Attorneys Fees |
| | Judge Hernan D. Vera |
| DEEPAK DUGAR, M.D., A MEDICAL CORPORATION | **DEFENDANT'S MEMORADUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY FEES** |
| Defendant | |

# TABLE OF CONTENTS

I.     INTRODUCTION...................................................................................... 1

II.    COMPLIANCE WITH LOCAL RULES.................................................. 3

III.   BACKGROUND ...................................................................................... 4

IV.    LEGAL STANDARD ............................................................................. 7

V.     ARGUMENT......................................................................................... 10

    A.   An award of attorneys fees is not warranted or necessary to serve the purposes of the Copyright Act. ..................................................................... 10

       1.   Plaintiff obtained a limited degree of success. ............................... 10

       2.   Defendant's resistance to Plaintiff's demands, including its affirmative defenses presented at trial, were not frivolous and were objectively reasonable. ...... 12

       3.   Plaintiff's motivation in pursuing her claim in the litigation was to coerce a settlement in excess of her actual damages; and her attorneys sought to obtain payment of fees as a primary objective............................................................. 14

       4.   Considerations of compensation and deterrence do not warrant an award of fees.   ........................................................................................................ 17

       5.   Courts in similar cases have declined to award attorneys fees to prevailing plaintiffs.   ...................................................................................................... 18

       6.   Awarding attorneys fees to Plaintiff will not further the purposes of the Copyright Act............................................................................................... 19

    B.   The attorneys fees sought by Plaintiff are not reasonable or justifiable.  20

       1.   Plaintiff's fee request is not proportional to the recovery obtained..........27

       2.   Plaintiff's refusal to engage in reasonable settlement discussions compounded the litigation and thus warrants the denial of fees...................................28

       3.   Other Considerations. ..................................................................... 29

       4.   Fees should not be awarded for Plaintiff's fee application. ........................31

CONCLUSION ..................................................................................... 32

1

TABLE OF AUTHORITIES

2

**Cases**

3

Adler Medical et al. v. Harrington, Case No. 1:22-cv-00072 KG-LF (D. N. Mex.)..6

Alchemist Evolution, LLC v. Smash, Inc., 2011 U.S. Dist. LEXIS 168346 (C.D. Cal., March 1, 2011)...................................................................................15

Boeson v. Dimoro Enterprises, LLC, 2020 U.S. Dist. LEXIS 183927 (N.D.N.Y., Oct. 5, 2020) ........................................................................................18

Brighton Collectibles, Inc. v. RK Textile Leather Mfg., 2014 U.S. Dist. LEXIS, 151263 (S.D. Cal. Oct. 24, 2019)....................................................................25

Cobbler Nevada LLC v. Anonymous Users of Popcorn Time, 2016 U.S. Dist. LEXIS 105333 (D. Ore. Aug. 10, 2016) ..............................................................20

Digital Reg of Texas, LLC v. Adobe Systems, Inc., 2015 U.S. Dist. LEXIS 57715 (N.D. Cal. May 1, 2015)..........................................................................27

Enterprise Mgmt. v. Construx Software .........................................................24

Fogerty v. Fantasy, Inc. 510 U.S. 517, 114 S. Ct. 1023 (1993) .............7, 8, 9, 10, 12

Glacier Films (USA), Inc. v. Turchin, 896 F. 3d 1033 (9th Cir. 2018)................7, 11

Glass v. Sue, 2011 U.S. Dist. LEXIS 16793, (C.D. Cal. Feb. 8, 2011) ...................12

Golden v. Michael Grecco Productions, Inc., 524 F. Supp. 3d 52 (E.D.N.Y. 2021) ....................................................................................................18

Harrington v. Vintage Ways, No. 1:22-cv-0971-TWT (N.D. Ga.) .........................23

Hensley v. Eckerhart, 461 U.S. 424 ..................................................8, 9, 21, 26, 29

Holenda v. Infinity Select Insurance Co., 2014 U.S. Dist. LEXIS 18632 (C.D. Cal. Feb. 13, 2014)........................................................................................13

Ingram v. Oroudijian, 647 F. 3d 925 (9th Cir. 2011) ...........................................9, 28

Jitrade, Inc. v. Alexia Admor French Designer Group, 2019 U.S. Dist. LEXIS 240602 (C.D. Cal. Sept. 17, 2019) .................................................................9

Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 136 S. Ct. 1979 (2016) ....................................................................................7, 8, 9, 10, 12

Lanard Toys, Ltd. v. Dimple Child, LLC, 2020 U.S. Dist. LEXIS 128018 (C.D. Cal. May 4, 2020)......................................................................................21

Lowery v. Rhapsody International, Inc., 69 F. 4th 994 (9th Cir. 2023)....................27

Martinez v. County of Los Angeles, 2024 U.S. Dist. LEXIS 105015 (C.D. Cal. Jan. 25, 2024)........................................................................................23

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*ME2 Productions, Inc. v. Ahmed;* 289 F. Supp. 3d 760 (W.D. Va. 2018) ..............28

*Michael Grecco Productions, Inc. v. Trekmovie.com,* 677 F. Supp. 3d 1104 (C.D. Cal. 2023) ........................................................................................................16

*Oppenheimer v. Williams,* 2021 U.S. Dist. LEXIS 170057 (D. S. Car. Sept. 8, 2021)........................................................................................................................29

*Prison Legal News v. Ryan,* 2024 U.S. Dist. LEXIS 49055 (D. Ariz. March 20, 2024)........................................................................................................................21

*Reilly v. Wozniak* ............................................................................................................25

*Russell v. Walmart, Inc.,* 2024 U.S. Dist. LEXIS 15631 (C.D. Cal. Jan. 2, 2024)......
............................................................................................................................12, 13

*Shealey v. Wilkie,* 946 F. 3d 1294 (Fed. Cir. 2020)................................................16

*Star Fabrics, Inc. v. Millenium Clothing, Inc.,* 2015 U.S. Dist. LEXIS 182206 (C.D. Cal. March 31, 2015)..........................................................................................14

*Stokes v. Jerry James, Inc.,* 2023 U.S. Dist. LEXIS 5576 (C.D. Cal. Jan. 10, 2023)
............................................................................................................................28

*WB Music Corp. v. Royce International Broadcasting Corp.,* 2018 U.S. Dist. LEXIS 227743 (C.D. Cal. July 9, 2018) ....................................................9, 11, 25

*Wilson v. Kayo Oil Company,* 2008 U.S. Dist. LEXIS 21730 (S.D. Cal. Feb. 29, 2008 ...........................................................................................................................4

**Statutes**

17 U.S.C.§ 504(c) ...........................................................................................................1

17 U.S.C. ¶ 505 ...................................................................................................7, 16, 20

28 U.S.C. § 1338(a) .......................................................................................................25

**Rules**

F.R. Civ. P. 56(c)(4) .......................................................................................................4

F.R. Civ. P. 68................................................................................................................11, 16

L.R. 3-3.1.1 .......................................................................................................................3

L.R. 7-7 .............................................................................................................................4

L.R. 11-3.6.1 .....................................................................................................................3

L.R. 11-6 ....................................................................................................3

L.R. 7.1(h) (S.D. Cal. 2008) .....................................................................4


**Other Authorities**

CLIO "How Much Should I Charge As A Lawyer In New Mexico?" ...................24

CopyCat Legal website.......................................................................... 17

"What To Do If You Receive A CopyCat Legal Copyright Demand Letter and
    Draft Complaint" .................................................................................17

**Exhibits**

Ex. 1  Peacock Law Invoices........................................................................22

Ex. 2  CopyCat Legal Time Records ...........................................................22

Ex. 3 Lauren Hausman Information .............................................................22

Ex. 4   CLIO "How Much Should I Charge As A Lawyer In New Mexico?".........24

# I.    INTRODUCTION

Plaintiff Maureen Harrington seeks an award of attorneys fees against Defendant Deepak Dugar, a Medical Corporation ("Dugar Corp.") as the prevailing party in this case, having received a jury award of $1500 in actual damages and $10,000 in statutory damages, of which she elected the statutory damages.  The result of the lawsuit is hardly that Plaintiff "overwhelmingly prevailed" or the "total victory" proclaimed by her lawyers (Plaintiff's Motion [Doc. 201], p. 5).  Given the limited benefit she obtained from the litigation--after having initially demanded $30,000; then alleging willful infringement and seeking the maximum $150,000 available under the statute (17 U.S.C.§ 504(c)); after failing to respond to a series of offers of judgment served by Defendant; and then having upped her settlement demand to a non-negotiable $75,000 (see Declaration of Defendant's counsel, ¶¶ 6-9)--the application of factors to be considered by the Court in exercising its discretion with respect to fees weighs in favor of denying any fees to Plaintiff.

Should the Court determine any fee award is appropriate, it should require the award not be inconsistent with the fee bargain made by Mr. Harrington before his death, as modified by Mrs. Harrington, that applied to all the infringement claims Copycat Legal pursued on behalf of Mr. and now Mrs. Harrington.  There is no basis for finding that Defendant acted frivolously or was unreasonable in declining to accept settlement demands that greatly overvalued Plaintiff's infringement claim.  Plaintiff engaged in excessively aggressive litigation in effort

to exact an unreasonable settlement from Defendant.  Plaintiff's fee request is enormously disproportionate to the benefit she realized from this lawsuit.

Should the Court apply the lodestar method in awarding Plaintiff any attorneys fees, it should take into consideration the factors applicable under governing case law, including the excessive and unnecessary litigation conduct of Plaintiff's lawyers; the motivation of Plaintiff's attorneys; the fact that Defendant did not engage in unreasonable litigation conduct; the rulings of other courts in similar cases; the appropriate billing rates for any award to Plaintiff's lawyers; and the proportionality of any fee to be awarded in light of the damages awarded by the jury.  The Court should recognize that the amount of the fees sought by Plaintiff are excessive in numerous respects; and that Plaintiff's lawyers' efforts to seek fees based on rates they do not regularly charge or on a "multiplier" is evidence only of their efforts to obtain a windfall that is not contemplated by or consistent with the purpose of the statutory provision for attorneys fees in copyright infringement litigation.

As discussed and shown below, in pursuing this case to trial, Plaintiff's attorneys were motivated largely, and seemingly primarily, by the prospect of obtaining an attorneys fees award vastly in excess of the amount they were entitled to receive under the terms of representation to which they had agreed, and then modified to their advantage after the death of Mr. Harrington.  The award of attorneys fees in copyright litigation is to benefit the parties, not their attorneys.

2

The possibility of an award of fees is an incentive that may allow deserving parties to obtain counsel to pursue possibly meritorious claims or defenses.  An award of fees to Plaintiff in the instant case--at least beyond the amount she bargained for with her attorneys--would serve only to reward the attorneys without any resulting benefits to Plaintiff, and does not serve the purpose the Copyright Act is intended to serve.

## II.    COMPLIANCE WITH LOCAL RULES

Plaintiff has ignored several local rules in its submission.  L.R. 11-6 limits to 25 the number of pages a party may include n a memorandum in support of a motion, without leave of court.  Plaintiff's memorandum is 27 pages, exclusive of its L.R. 7-3 Certificate and Certificate of Service.  L.R. 3-3.1.1, which sets the required font size at 14 point, makes no exception for footnotes.  While L.R. 11-3.6.1 allows footnotes to be single spaced, the net effect of Plaintiff's use of very small font for its footnotes is to exacerbate its exceeding the number of pages allowed.

Plaintiff's lead counsel has filed a Declaration of 12 pages (11 1/2 in actual page coverage) in support of Plaintiff's motion for fees.  Much but not all of that Declaration is directed to presenting facts concerning counsel's experience, billing rates and practices, and time records in this matter.  But significant portions of his Declaration contain argument, including extensive case citations and summaries (¶ 19, pp. 5-7; ¶ 20 pp. 7-9), and a discussion of Defendant's counsel's billing

practices, apparently intended to shore up Plaintiff's own argument in support of a fee award. These portions of counsel's Declaration are not for the purpose of presenting facts within his own sphere of knowledge. They are for the purpose of making an argument based on other sources, most of which are not within his own personal knowledge. Accordingly, the Declaration violates L.R. 7-7, which provides "Declarations shall contain only factual evidentiary material and shall conform as far as possible to the requirements of F.R. Civ. P. 56(c)(4).[1]

### III.   BACKGROUND

Plaintiff's discussion of the Background of this case is largely correct, but either misstates or leaves out several background events or aspects of the facts pertinent to this case and the determination of whether or how much to award in attorneys fees to Plaintiff. With respect to several of the numbered paragraphs of Plaintiff's Background discussion, Defendant notes the following:

2. When Mr. Harrington discovered the unauthorized use of the photograph, he already had in place his agreement with CopyCat Legal that set the terms of its

---

[1] In <u>Wilson v. Kayo Oil Company</u>, 2008 U.S. Dist. LEXIS 21730, *23 (S.D. Cal. Feb. 29, 2008), the district court found that plaintiff's attorneys violated that court's local rule 7.1(h) by filing oversized briefs without permission of the court. The court, which described its local rules as being of "paramount importance" (<u>Id</u>. *24), did not sanction the attorneys for that alone (they were found responsible for more serious sins), and Defendant's counsel in the instant case is not asking this Court to sanction Plaintiff or its counsel. But the violations noted here do have real consequences: Plaintiff's memorandum, already over the page limit, would have been even moreso had counsel included pages of what is plainly argument--not facts based on personal knowledge--in the legal memorandum, rather than in counsel's Declaration.

compensation in this (and other) cases.  See Exhibit H to the Declaration of Defendant's Counsel, submitted herewith.

3.  In previous correspondence on January 18, 2022 between Plaintiff's counsel and Defendant's original California-based attorney Jonathan Paul, Mr. Paul asked for a rate card showing the rates Mr. Harrington charged for his photographs, which Plaintiff's counsel did not provide.  See Exhibits B and C to the Declaration of Defendant's counsel, submitted herewith.

8.  The allegations of Defendant's counterclaim (and its affirmative defenses) were not that Mr. Harrington failed to identify himself on websites where his photographs were found; rather, that he failed to take action to prevent his photos from being available on websites that did not identify him as the photographer or copyright owner, in order to further his opportunities to make claims of infringement against those who unwittingly download his photographs.

14.  The jury verdict in this case found that Plaintiff had suffered actual damages of $1500 and set statutory damages at $10,000.  Plaintiff of course elected to receive the higher amount.

Plaintiff failed to mention several other events that form part of the Background of this matter.  She did not say or acknowledge that the case was transferred to this Court only after the Court in New Mexico ruled--over Plaintiff's strenuous opposition [Doc. 17]--that it did not have jurisdiction over Defendant, and ordered the case transferred to this Court [Doc. 21].  Nor did she mention that

Mr. Harrington had moved to have Defendant's counsel disqualified in all cases in which he had clients who were defending his infringement claims in New Mexico--which at the time included Dugar Corp. before this case was transferred to this Court.  See Plaintiff's motion to disqualify filed in the case of <u>Adler Medical et al. v. Harrington</u>, Case No. 1:22-cv-00072 KG-LF (D. N. Mex.) [Doc. 73] and the Court's Order denying that motion [Doc. 99].

In her argument (Motion, pp. 7-9) Plaintiff seems to suggest that Dr. Dugar's testimony about his own limited knowledge of Mr. Harrington's practices undermined Defendant's counterclaims [Doc. 201-3] and accuses Dr. Dugar and Defendant of being "recalcitrant" in having "forced this case to trial by taking wholly indefensible positions . . ." (Motion, p. 7).  Nowhere does Plaintiff explain how Dr. Dugar would have personal knowledge of Mr. Harrington or his practices, or acknowledge her (and her lawyers') actions in forcing the case to trial by demanding amounts to settle this case that were knowingly far in excess of any damages Plaintiff suffered or could reasonably expect to recover (discussed in Defendants counsel's Declaration, ¶¶ 5, 7, 9).  In this Plaintiff's conduct was consistent with Mrs. Harrington's understanding of the strategic purpose of all the litigation she pursued to obtain payment in excess of the value of her claim.[2]

Plaintiff has chastised Defendant for having "blamed the victim."  Plaintiff's

---

[2]  In her deposition Mrs. Harrington testified that the purpose of lawsuits like the instant case was to exact payments in excess of the value of the infringing use.  See Exhibit I to Declaration of Defendant's counsel, submitted herewith, p. 94, ll. 19-24.

Motion, p. 11.  But Defendant had tried to settle the case promptly after Plaintiff sued Defendant in the wrong venue and later continued those efforts, and there is a sound factual basis to find Plaintiff responsible for forcing the case to trial, and accordingly for denying her the award of attorneys fees she and her lawyers seek.

## IV.   LEGAL STANDARD

The District Court has broad discretion in determining whether, and in what amount, it may award attorneys fees to the prevailing party under 17 U.S.C. § 505, which discretion is to be exercised giving "due consideration to all other circumstances relevant to granting fees."  Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 200, 136 S. Ct. 1979 (2016); Glacier Films (USA), Inc. v. Turchin, 896 F. 3d 1033, 1037 (9th Cir. 2018) ("Although the court enjoys 'wide latitude to award attorneys fees based on the totality of circumstances in a case,' its discretion must remain tethered to judicial guideposts.", citing Kirtsaeng).

In Fogerty v. Fantasy, Inc. 510 U.S. 517, 114 S. Ct. 1023 (1993), in which the Supreme Court confirmed the even-handed approach to considering awards of attorneys fees to prevailing plaintiffs or defendants, the Court reviewed the legislative history and policy underlying the Copyright Act's fee provision and imposed two "restrictions" (see Kirtsaeng, 579 U.S. at 201) on district courts' exercise of discretion:  the courts should not award fees as a matter of course to a prevailing party; and must apply a single, not dual, standard to parties seeking fee

**DEFENDANT'S MEMORADUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS FEES**

awards.  Fogerty, 510 U.S. at 533.[3]

In both Fogerty and Kirtsaeng the Supreme Court mentioned "several non-exclusive factors" to be considered in making fee awards, including "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence."  Fogerty, 510 U.S. at 534, n. 19; Kirtsaeng, 579 U.S. at 202.  Guidance is also found by application of 12 factors to be considered in making statutory fee awards as set out in an earlier Supreme Court decision in Hensley v. Eckerhart, 461 U.S. 424, 429, n. 3,[4] which factors were referenced with approval in Fogerty, 510 U.S. at 534.

Not all the factors or considerations mentioned in these cases will be present in every case, and some are clearly more weighty than others.  Courts generally

---

[3]  The Fogerty Court distinguished the policy underlying the Copyright Act's fee provision from other similar statutes, such as those found in the civil rights laws, based on the purpose of the Copyright Act to encourage the creation of original artistic works, while the purpose of the civil rights statutes was to encourage "private attorneys general" to bring meritorious lawsuits.  510 U.S. at 524; and also discussed that the Copyright Act's fee provision needed to be applied in light of "the strong background of the American Rule," and that accordingly fee awards in copyright cases were not to be made routinely, as was the case under the British Rule.  510 U.S. at 533-34.

[4]  The 12 factors are:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9)  the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client and (12) awards in similar cases.

consider, <u>inter alia</u>, the objective reasonableness of the parties' litigation conduct; their motivations; the degree of success achieved; the proportionality of the fee sought to the result of the litigation; and whether a fee award serves the purposes of the Copyright Act.  See, <u>e.g.</u>, <u>Jitrade, Inc. v. Alexia Admor French Designer Group</u>, 2019 U.S. Dist. LEXIS 240602, **7-8 (C.D. Cal. Sept. 17, 2019).  Also important in the present case is the nature of the ongoing relationship between Plaintiff (and Mr. Harrington as her predecessor) and CopyCat Legal, in which they had agreed to a contingent fee arrangement in this and all cases in which it represented the Harringtons.  Also factored in should be the efforts of the parties to settle this case before the need for trial,[5] and the results achieved by other plaintiffs in similar cases, both in the compensation achieved and their success in obtaining fee awards.  See <u>Fogerty</u> and <u>Hensley</u>, <u>supra</u>.

In her motion, at p. 4, Plaintiff refers to a 2018 decision in this Court, <u>WB Music Corp. v. Royce International Broadcasting Corp.</u>, 2018 U.S. Dist. LEXIS 227743, *4 (C.D. Cal. July 9, 2018), which in turn cited the earlier Supreme Court decision in <u>Hensley</u>, <u>supra</u>, for the proposition that a court should "ordinarily" award fees to a prevailing plaintiff in a copyright infringement case.  That proposition is inconsistent with the recent Supreme Court decision in <u>Kirtsaeng</u>,

---

[5]  The efforts and conduct of parties in connection with the settlement of lawsuits are properly considered in connection with a prevailing party's efforts to recover attorneys fees under fee-shifting statutes similar to that in the Copyright Act.  See <u>Ingram v. Oroudjian</u>, 647 F. 3d 925, 927 (9th Cir. 2011).

citing <u>Fogerty,</u> stating that fee awards should not be made as a matter of course.

<u>Kirtsaeng</u>, 579 U.S. at 202.

## V.   ARGUMENT

### A.   An award of attorneys fees is not warranted or necessary to serve the purposes of the Copyright Act.

Factors to be considered by the Court do not favor an award of attorneys fees to Plaintiff which, in view of all the relevant considerations, would not further the purposes of the Copyright Act; and were any award made it should recognize and be consistent with the fee agreement that governed Plaintiff's obligation to pay her attorneys.

### 1.   Plaintiff obtained a limited degree of success.

Despite Plaintiff trumpeting its "overwhelming success" and "total victory," the results achieved were, if not de minimus, far less than she had been seeking. She--and her lawyers'--choice to pursue her claim to trial, and decline even to respond to early and continuing efforts to settle the case for amounts that exceeded Plaintiff's actual damages, evidence that Plaintiff's counsel was focused on building a case to obtain payment of attorneys fees from Defendant far in excess of what the lawyers could earn under the arrangement CopyCat Legal had voluntarily entered, first with Mr. and then with Mrs. Harrington, to represent them in all their claims of infringement.

In touting her "total victory," Plaintiff ignores the conclusion of this Court in

WB Music Corp. v. Royce International Broadcasting Corp., supra,[6] and does not fairly describe or compare the Ninth Circuit's opinion in Glacier Films (USA), Inc. v. Turchin, 896 F. 3d. 1033 (9th Cir. 2018).  Turchin was one of apparently many who, using a file-sharing service, downloaded a film owned by Plaintiff, and after being located, admitted to it.  Represented by a court-appointed lawyer, he made a Rule 68 Offer of Judgment; and then a settlement was reached for $750 statutory damages, with attorneys fees to be decided by the district court.  Glacier sought $4833.35 in attorneys fees, which the district court denied.

The Court of Appeals found that Glacier's suit was a "total success" because it established that the infringement was proven and was willful.  Most important was the fact--clear but not emphasized by the Court of Appeals--that the suit was instituted not for the primary purpose of recovering damages, but as a kind of test case to affirm the principle that downloading films from a peer-to-peer service was to be punished as a copyright violation.  In that respect--which was the purpose of Glacier bringing the lawsuit--the case was a total success, settled on terms Glacier agreed to.

Glacier does not fit the facts of the present case, in which there was no agreed settlement; a very small actual damage award; no determination that

---

[6]  In that case the Court described the jury's award of $30,000 per infringement for each of a number of copyrighted songs for which the plaintiff sought $150,000 each as a "modicum of success" 2018 U.S. Dist. LEXIS, *7.  It noted that Defendant's infringement had been willful, Id., and that many of the positions asserted by Defendant were not reasonable, and they should have known had little or no chance of success. Id. *8.

Defendant's conduct was willful; and a statutory damage award for far less than Plaintiff had sought, either in Mr. Harrington's initial demand or in the Complaint he filed.  In that respect, Plaintiff's reference to the short statement in Glass v. Sue, 2011 U.S. Dist. LEXIS 16793, *8 (C.D. Cal. Feb. 8, 2011) (Plaintiff's Motion, p. 6) is correct and more to the point in the present case:  "In determining whether to award fees, courts consider a party's degree of success."

**2.     Defendant's resistance to Plaintiff's demands, including its affirmative defenses presented at trial, were not frivolous and were objectively reasonable.**

The Court should give "substantial weight to the objective reasonableness of the losing party's position." Kirtsaeng, supra at 199-200, as quoted in Russell v. Walmart, Inc., 2024 U.S. Dist. LEXIS 15631, *9 (C.D. Cal. Jan. 2, 2024).[7] Defendant's position taken throughout this litigation was, if anything, more "objectively reasonable" than Plaintiff's.  Defendant withdrew its counterclaims and several affirmative defenses before trial in acknowledgement that they could not be supported [Doc. 125], and pursued two defenses--and primarily its misuse defense-- in good faith, consistent with the principle that defendants should not be discouraged from pursuing potentially meritorious defenses.  See Fogerty, 510 U.S.

---

[7]  In Russell v. Walmart, a large attorneys fee award to plaintiff was justified by Walmart's persistent reliance on meritless and "virtually frivolous" defenses, over years of litigation, including its baseless efforts to challenge plaintiff's ownership of the copyrights at issue. Id., **4,9.  No such comparable conduct by Dugar Corp can be found here.  Rather, it promptly acknowledged Plaintiff's copyright ownership and tried to settle with Plaintiff.

at 527, cited with approval in <u>Russell v. Walmart</u>., <u>supra</u> at *8.  And in pursuing its

defenses, Defendant reasonably relied on the opinion and Report of its expert,

whose qualifications and methodology were not challenged.  See <u>Holenda v.</u>

<u>Infinity Select Insurance Co.</u>, 2014 U.S. Dist. LEXIS 18632, *10 (C.D. Cal. Feb.

13, 2014).  Defendant and its counsel relied on the expert's Report in raising and

pursuing the misuse defense.  See Declaration of Defendant's counsel ¶ 13.[8]  The

Court's evidentiary ruling on the eve of trial [Doc. 181] complicated Defendant's

ability to prove its defenses, but that does not provide cause for finding Defendant

to have been unreasonable in pursuing that defense.[9]

---

[8]  The basis for exclusion of Defendant's expert was the concern that his testimony
would usurp the role of judge and jury, and provides no basis for finding
Defendant's misuse defense to have been objectively unreasonable.

[9]  Plaintiff has unfairly accused Defendant, Dr. Dugar or their counsel of a variety
of misconduct that mischaracterizes their actions in this case, ranging from
contending they had taken "puzzling positions" to prolong the lawsuit (Motion, p.
9), to having included exhibits on Defendant's trial exhibit list that had been
excluded by the Court's order (<u>Id</u>., p. 10), or to having engaged in spoliation (<u>Id</u>)
Defendant's counsel believed there was a sound basis for offering Professor
Bracha's testimony as an expert, notwithstanding an adverse ruling in New Mexico.
That the Court disagreed does not make the argument frivolous or unreasonable.
Defendant's counsel also believed that the Court's exclusion of evidence to be used
in support of Defendant's copyright misuse defense did not necessarily preclude the
use of that evidence to oppose Plaintiff's claim for actual damages.  That counsel
did not eliminate those exhibits--after having stated that he intended to use them
directed to the damage claim--was not in knowing disregard of the Court's order;
and counsel made no further effort to introduce the particular exhibits into evidence
after the Court did not agree.  And there was no evidence that Dr. Dugar was
intending to destroy evidence when he instructed his web consultant to remove
photos whose ownership could not be verified with certainty, to avoid the
possibility of other infringement claims in the future.  In his testimony Dr. Dugar

If any party's conduct has been objectively unreasonable in this matter, it has been Plaintiff's. While she is the prevailing party, that itself does not insulate her and her attorneys' litigation conduct from scrutiny. As discussed both in the Background discussion above, and in other aspects of Plaintiff's litigation of this matter described below, Plaintiff acted to impose costs and burdens on Defendant for the purpose of obtaining payment in excess of the fair value of any damages suffered, and with the apparent primary purpose of increasing the amount of attorneys fees she (and her lawyers) might receive. In these respects it is Plaintiff's litigation conduct that was not objectively reasonable.

**3.    Plaintiff's motivation in pursuing her claim in the litigation was to coerce a settlement in excess of her actual damages; and her attorneys sought to obtain payment of fees as a primary objective.**

Both Parties can claim they were motivated to succeed in their litigation of Plaintiff's infringement claims, but that itself offers no meaningful information concerning Plaintiff's entitlement to fees. Plaintiff's own brief discussion of the subject of motivation, i.e., the purpose for which a party pursues or defends an infringement claim, reveals an improper motivation behind Plaintiff's litigation conduct. In her comment about Star Fabrics, Inc. v. Millenium Clothing, Inc., 2015 U.S. Dist. LEXIS 182206 (C.D. Cal. March 31, 2015), Plaintiff notes that, in that case, defendant's stubbornness in response to plaintiff's settlement efforts was a

_____

was clearly uncertain about the exact times other images were later removed from his website, but there was no basis for finding that he knowingly attempted to destroy evidence related to Plaintiff's infringement claim.

14

factor in the court's award of fees to the plaintiff (Plaintiff's Motion, p. 12). Plaintiff similarly cites <u>Alchemist Evolution, LLC v. Smash, Inc.</u>, 2011 U.S. Dist. LEXIS 168346 (C.D. Cal., March 1, 2011), noting Plaintiff's unsuccessful efforts to settle the case early as a factor in awarding fees.  (<u>Id</u> *3).

It is exactly these considerations that undermine Plaintiff's fee request in this case.  It was Defendant that initiated efforts to settle this case, early and repeatedly.  See Declaration of Defendant's counsel, ¶¶ 5-8.  Rather than respond and engage in potentially fruitful settlement discussions, Plaintiff waited until mediations were scheduled, and then made excessive demands, ultimately a non-negotiable settlement demand of $75,000 (Declaration of Defendant's counsel, ¶9).  Her demand so far exceeded the amount of damages she could reasonably expect to recover--and did in fact greatly exceed the amount she was awarded at trial--as to preclude a realistic possibility of settlement of this case.  Moreover, Plaintiff's ultimate settlement demand revealed that her--or perhaps more accurately her attorneys'--motivation was not to reach a settlement that would reasonably compensate Plaintiff for damages she could justifiably claim, but rather to obtain an award of fees that would far exceed the fees they would earn under the contingency terms of representation to which Plaintiff and her lawyers had agreed.

Section 505 of the Copyright Act, 17 U.S.C. ¶ 505, allows an award of reasonable attorneys fees to the prevailing party, not to that party's attorney.[10]  One of the purposes of allowing courts to make awards of attorneys fees is to encourage private enforcement of a copyright holder's rights.  <u>Michael Grecco Productions, Inc. v. Trekmovie.com</u>, 677 F. Supp. 3d 1104, 1110 (C.D. Cal. 2023).  That purpose is best served if Parties can resolve infringement claims without litigation, or by having the parties curtail litigation by prompt settlements.  Plaintiff was not obligated to respond to Defendant's offers of judgment under the provisions of Rule 68; but such offers are intended as a stimulus to settlement negotiations.  By choosing to ignore all the offers of judgment Defendant served, and making unreasonable settlement demands and then refusing to negotiate, Plaintiff--or her lawyers--demonstrated their true motivation, which was to obtain fees, not a reasonable resolution of her claim.[11]

---

[10]  See <u>Shealey v. Wilkie</u>, 946 F. 3d 1294, 1297 (Fed. Cir. 2020) (right to attorneys fees under Equal Access to Justice Act ("EAJA") belongs to the prevailing party, not its attorney).  The pertinent language of the attorneys fees provision of the EAJA and Section 505 of the Copyright Act are essentially identical.

[11]  Plaintiff will continue to complain--as she has throughout this litigation--that Defendant is engaged in "blaming the victim."  But if Plaintiff can be characterized as a victim of infringement, she can also be subject to blame for her efforts to unnecessarily exploit Defendant's situation.  Regardless of the Court's view and decisions concerning Defendant's copyright misuse defense, it is clear that Defendant wanted to settle this case at the outset; made reasonable efforts to do so; and was ignored and rebuffed, forcing it to litigate to defend its refusal to pay Plaintiff the unreasonable amounts she and her lawyers demanded.

CopyCat Legal's website is revealing and pertinent to Plaintiff's request for attorneys fees.  It describes "Our Approach" as "simple:  offer the infringer a fair settlement amount.  If the settlement is rejected, file a lawsuit and have no mercy." www.copycatlegal.com/intellectual-property-lawyers/.  Its "Approach" is, to say the least, controversial.  See "What To Do If You Receive A Copycat Legal Copyright Demand Letter And Draft Complaint."  www.heitnerlegal.com/2021/09/19/what-to-do-if-you-receive-a-copycat-legal-copyright-demand-letter-and-draft-complaint/. Accordingly, Dugar Corp's rejection of CopyCat Legal's original demand for a payment of $30,000 doomed it to litigation without mercy.  Plaintiff's lawyers' "approach" was neither fair, in view of the circumstances (initially demanding $30,000 for a claim worth far less) nor was it in furtherance of the purposes of the copyright law.

**4.    Considerations of compensation and deterrence do not warrant an award of fees.**

An award of attorneys fees to Plaintiff will do nothing to further considerations of compensation and deterrence; but will serve only to unfairly punish Defendant for its one, non-willful infringement, and provide additional compensation to her lawyers after they unreasonably compounded the litigation. Defendant has incurred significant expenses to defend claims that could have, and should have, been settled at the outset but for the choice of Plaintiff and her lawyers to eschew engaging in reasonable settlement negotiations, in order to pursue a claim for attorneys fees that mounted as trial approached.  Defendant was immediately

and effectively deterred--promptly removing the offending photograph when it first received notice of Plaintiff's claim.  Now, as a result of having gone through the trial (rather than pay Plaintiff's excessive settlement demand), it has incurred additional substantial expenses in order to avoid any possible future copyright violations.  See Declaration of Deepak Dugar submitted herewith.  Compensating Plaintiff with a large award of attorneys fees is not necessary or appropriate to serve the purposes of the Copyright Act, as is further discussed below.

**5.     Courts in similar cases have declined to award attorneys fees to prevailing plaintiffs.**

Courts in recent years have dealt with similar cases in which photographers have prevailed on claims of infringement for unauthorized use of their photographs on defendants' websites, social media or similar uses without awarding attorneys fees.  See, e.g., <u>Golden v. Michael Grecco Productions, Inc.</u>, 524 F. Supp. 3d 52, 67 (E.D.N.Y. 2021); <u>Boeson v. Dimoro Enterprises, LLC</u>, 2020 U.S. Dist. LEXIS 183927, **12-14 (N.D.N.Y., Oct. 5, 2020) (discussing plaintiff's counsel's exaggerated experience and excessive rates and denying request for attorneys fees).[12]

---

[12]  In other cases discussed below courts have deeply reduced requested fee awards in order to prevent windfalls to prevailing plaintiffs whose lawyers are motivated more by the prospect of obtaining fee awards than obtaining just compensation for their clients.

**DEFENDANT'S MEMORADUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS FEES**

**6.    Awarding attorneys fees to Plaintiff will not further the purposes of the Copyright Act.**

Awarding substantial attorneys fees to Plaintiff will serve none of the purposes of the Copyright Act--neither its primary purpose to encourage the creation of works of art that benefit the public, not its secondary or subservient purpose of rewarding the authors of such works.  To the contrary, a substantial fee award will serve to encourage activity that disserves the purpose of copyright enforcement, as evidenced in this case, where Plaintiff's attorneys refused to engage in reasonable settlement efforts, motivated by the hope or expectation that they might coerce settlement far in excess of the actual damages suffered by the party they represent, and/or receive an award of attorneys fees far in excess of any damages the trier of fact awarded on the merits of the claim.

Here Plaintiff has received the jury verdict that compensates her for her damage claims.  By her own agreement with her lawyers, freely negotiated, she will receive 50 percent of that amount, and her lawyers will receive 50 percent.  While her lawyers have claimed they are responsible for the costs of litigation (which is contradicted by Plaintiff's testimony, see Exhibits H and I to the Declaration of Defendant's counsel), those costs that are taxable will be paid by Defendant.  Two years of litigation likely could have been avoided had Plaintiff and her lawyers

19

engaged in reasonable settlement negotiations over what was obviously a modest claim.[13]

Defendant has been sufficiently punished and deterred from future violations, as evidenced by Dr. Dugar's Declaration submitted herewith.  Given all the pertinent facts, no good purpose would be served by rewarding Plaintiff or her attorneys with the large attorneys fee award they seek.

**B.     The attorneys fees sought by Plaintiff are not reasonable nor justifiable.**

Plaintiff cites and discusses a myriad of cases to support the amount of attorneys fees she seeks to have awarded, based on a lodestar calculation.  See Motion, pp. 11-20 and 23-24, and her counsel's Declaration, pp. 6-8.  But that was not the basis on which her lawyers had agreed to be compensated, in this and all the cases in which they represented first Mr. and now Mrs. Harrington. That agreement provides a fair and reasonable basis for her attorneys to be compensated, which on the present facts would serve the purposes of Section 505 of the Copyright Act.[14]

---

[13]  Recognizing that the purpose of the Copyright Act is to encourage the production of original literary or artistic works, one court in this Circuit has noted that "[l]itigation conduct that needlessly increases the expense of resolving copyright disputes neither encourages innovation nor appropriately rewards an author's creation," and denied attorneys fees to the prevailing plaintiff who had filed over 300 infringement cases.  Cobbler Nevada LLC v. Anonymous Users of Popcorn Time, 2016 U.S. Dist. LEXIS 105333, *8 (D. Ore. Aug. 10, 2016).

[14]  Defendant recognizes that in this Circuit the lodestar method for calculating attorneys fees awards under Section 505 of the Copyright Act is the norm.  But even when the lodestar is determined, the Court should consider other factors that

And as further shown, substantial amounts of the time-based lodestar calculation of fees was for services that were not productive and unreasonably created litigation burdens on Defendant; was part of a strategy to obtain payment from Defendant far in excess of Plaintiff's actual damages; disregarded that the case was originally filed and litigated in New Mexico; was in part based on rates charged by one of Plaintiff's lawyers that were not reasonable in view of her limited experience--whether charged at her normal rates or the unjustified enhanced rates or multiplier Plaintiff seeks.[15]

A significant amount of time recorded by CopyCat Legal submitted with Mr. DeSouza's Declaration [Doc. 201-2] was for services resulting from her lawyer's own unwarranted actions taken--such as filing this case in New Mexico in the first instance [Doc. 1] and then opposing Defendant's motion to dismiss or transfer

---

may--and in this case does--justify denying fees, or at least a deep reduction from any amount calculated based on the lodestar.  See fn. 15 below.

[15]  See, e.g., Prison Legal News v. Ryan, 2024 U.S. Dist. LEXIS 49055 (D. Ariz. March 20, 2024) (in view of a variety of questionable billing practices and the limited success achieved by plaintiff, the court reduced the lodestar calculation by 70 percent, although it allowed fees sought for filing the application.  Id. **22-27); Lanard Toys, Ltd. v. Dimple Child, LLC, 2020 U.S. Dist. LEXIS 128018 (C.D. Cal. May 4, 2020) (awarded 20 percent of lodestar amount sought by plaintiff, reflecting limited success achieved.  "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole."  Id. *11, citing Hensley, 461 U.S. at 440.

DEFENDANT'S MEMORADUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS FEES

[Doc. 7] that resulted in the transfer of this case to this Court [Doc. 21].[16] Defendant is submitting herewith as Exhibit 2 a copy of Plaintiff's counsel's time records submitted by Plaintiff with her Motion, with asterisks by Defendant marking entries that were significant and evidenced time that was spent due to Plaintiff's unjustifiable filings; with Xs indicating excessive time spent on individual time entries; and Es indicating daily time entries the week of trial for extensive daily hours that do not appear to be justified.[17]

Nor is the hourly billing rate charged for Ms. Hausman reasonable, given her limited experience and role at trial.  Ms. Hausman was admitted to the Florida bar in May 2022.  See Exhibit 3 attached hereto.  She was barely one year out of law school when she began working on this case, billing at the rate of $325.00 per hour, when this case was in the New Mexico Court.  Plaintiff seeks compensation for 133 hours for her time.  Plaintiff offers no evidence of the reasonableness of those rates except for an October 6, 2022 unreported Order for Default Judgment in Harrington

---

[16]  Plaintiff's filing the original Complaint in New Mexico was evidently done in effort to inconvenience Defendant, along with its principal Dr. Dugar, who were residents of California without any known active connection to New Mexico; and had the effect of causing Defendant's attorneys to expend a great deal of time in obtaining the transfer of the case.  See invoices sent by Defendant's counsel (when at his previous firm) for periods during which the motion to dismiss or transfer was being litigated, attached hereto as Exhibit 1.  The total amount of Defendant's counsel's time entries attributable to the motion to dismiss, marked by asterisks, was $13,454.50.

[17]  As but one example, on the third day of trial, May 30, 2024, each of Plaintiff's lawyers recorded 9.3 hours of trial time, which was not possible with trial beginning at 9:00 a.m. and having concluded mid-afternoon.

22

v. Vintage Ways, No. 1:22-cv-0971-TWT (N.D. Ga.), in which the Court found $300 per hour a reasonable rate for Ms. Hausman, then just out of law school, based only on the statement in the Declaration of Harrington's counsel with an unopposed motion for default judgment [Doc. 7-2, ¶10].  The only statement in the present case offered to support her billing rate is Mr. DeSouza's assertion that the rates for CopyCat Legal's lawyers were reasonable within the market where its offices are located.  DeSouza Declaration [Doc. 201-1, ¶10].  These representations are neither objective nor reliable for the purpose of establishing a lawyer's billing rates in calculating an award of attorneys fees. Ms. Hausman's role at trial was apparently limited to providing administrative support.

Plaintiff's lawyers do not regularly practice law in the Los Angeles area community.[18]  They have no office, lawyers or staff in this community.  Defendant does not contest Mr. DeSouza's stated billing rate in the community where he normally practices; but he has no qualification to charge or opine on the reasonableness of rates for his firm's services either in New Mexico or California, where Plaintiff's complaint was litigated, in which states he is not a bar member. See Martinez v. County of Los Angeles, 2024 U.S. Dist. LEXIS 105015, **4-5

---

[18]  Plaintiff's submissions herein show an address in Beverly Hills, but that appears to be a mail drop/accommodation address, and the 877 phone number shown rings to CopyCat Legal's office in Florida.  Ms. Hausman is a member of the California bar, but lives and works in Florida.  See CopyCat Legal's website at www.copycatlegal.com.

(C.D. Cal. Jan. 25, 2024).  Other than citing case law[19] Mr. DeSouza can claim no familiarity with the reasonable billing rates for his firm's services in Los Angeles.

Throughout the litigation of this case, CopyCat Legal has shown its unfamiliarity with the practice and rules, first in New Mexico where it first filed its Complaint and then in this Court where several of its filings were rejected for failure to comply with Local Rules [Doc. 19], or missing filing deadlines [Doc. 123], and which then sought to reschedule the trial date because of a scheduling conflict it had created with another case [Doc. 144].

In its motion Plaintiff also ignores that lawyers' billing rates are far lower in New Mexico than for comparable services in either southern Florida or Los Angeles.  According to CLIO, a leading legal technology and information service provider, the average hourly rate for IP services in New Mexico was $287 per hour in 2023.  See Exhibit 4 submitted herewith.

Among the many contentions Plaintiff's lawyers make in support of their application for fees, the oddest is that the reasonableness of the fee request is

---

[19]  Mr. DeSouza cited more than 15 cases in his Declaration to support the contention that Plaintiff should be awarded attorneys fees calculated at rates in excess of those he and his staff normally charge, with his own rates to be increased by 33 1/3 percent.  In essentially all those cases the attorneys seeking fee awards were located and practiced in the Los Angeles area.  Many of the cases cited were decided by default judgment.  There is no indication in any of those cases that the lawyers had litigated--including their efforts or lack thereof to reach reasonable settlements of the parties' claims or defenses--for the primary purpose of seeking an award of fees.  To the contrary, one takeaway from reviewing these cases is that the lawyers seeking fees had seemingly been concerned with seeking fees only after the merits of the cases had been decided.

24

supported by comparing the number of docket entries in other cases in which fees were awarded to the number of docket entries in the present case (Motion, p. 23). None of the cases Plaintiff cited present facts similar to the instant case.  In the first three of those cases (<u>Enterprise Mgmt. v. Construx Software</u>; <u>Reilly v. Wozniak</u> and <u>WB Music Corp. v. Royce Intl.</u>) the courts found, after thorough analyses, that the losing party had acted either in bad faith or in an objectively unreasonable manner.  None of the decisions cited mentioned the number of docket entries in the case.[20]

In its ultimate attempt to enhance the amount of attorneys fees it is asking the Court to award, Plaintiff argues that a "contingency multiplier" should be applied to the lodestar calculation of its fees, to take into consideration the fact that Plaintiff's lawyers had agreed to a contingent fee arrangement with first Mr., and then Mrs. Harrington (Motion, pp. 24-27).  Plaintiff relies entirely on the decisions of California state courts in non-copyright cases that have nothing in common with the present case.  She offers no authority from copyright jurisprudence.  It is only to state the obvious that the California state court decisions cited by Plaintiff do not apply to this Court in making decisions about copyright infringement claims over which it exercises exclusive original jurisdiction.  See 28 U.S.C. § 1338(a).  And in

---

[20]  Given space limitations, Defendant will not offer any individual analysis of the cases cited by Plaintiff about numbers of docket entries.  It notes, however, that in <u>Brighton Collectibles, Inc. v. RK Textile Leather Mfg.</u>, 2014 U.S. Dist. LEXIS, 151263, *29 (S.D. Cal. Oct. 24, 2019), the court reduced the lodestar by 60% to adjust for a number of equitable considerations.

the present case there is no state law claim to which any state law provision, principle or practice would apply.

It is also worth noting that Plaintiff has made several inaccurate and unsupportable contentions in arguing for a "contingency multiplier" to increase the amount of its attorneys fees.  As shown in the Declaration of Defendant's counsel and Exhibits H and I submitted therewith, Plaintiff's fee application apparently exaggerates the extent of risk Plaintiff's lawyers have assumed.  In their deposition testimony both Mr. and Mrs. Harrington testified that they were responsible for costs incurred in the lawsuits in which they were represented by CopyCat Legal. See Declaration of Defendant's counsel, ¶14 and Exhibits H and I attached. Further, Plaintiff's statement about the burden on Mr. DeSouza and Ms. Hausman being unable to work on other matters (Motion, page 26)--apparently referring to one of the 12 <u>Hensley</u> factors concerning the preclusion of other employment--is intentionally misleading.  Plaintiff does not say that her lawyers turned down or were otherwise prevented from any other employment in order to represent her in the present case--only that the time spent in preparing for a trial and trying the case diverted their attention from other matters--a temporary diversion which is always the case when lawyers try cases. There is no suggestion, much less evidence, that Plaintiff's counsel actually turned down other work because of the burdens of handling a relatively simple case that required three days of trial.

**1.      Plaintiff's fee request is not proportional to the recovery obtained.**

Awarding Plaintiff attorneys fees that are 15 to 30 times the amount of the statutory damages awarded at trial would be wildly disproportionate to the benefit achieved.  See Lowery v. Rhapsody International, Inc., 69 F. 4th 994, 1000 (9th Cir. 2023) ("When evaluating reasonableness a district court must consider the benefit that class obtained in the case").  Lowery concerned an attorneys fee award after a class action settlement returned a little over $50,000 to the class members, and the district court awarded fees of 30 times the settlement amount, which the Circuit Court found unreasonable, and remanded with instruction to ensure that the fees are reasonably proportional to the benefit received."  Id. at 997.

The importance of proportionality is not limited to class action cases.  It is one of the Hensley factors to be considered, which was discussed specifically by the Supreme Court:  "One of the factors in Johnson, 'the amount involved and the results obtained,' indicates that the level of a plaintiff's success is relevant to the amount of fees to be awarded."  Hensley, 461 U.S. at 430.  See also Digital Reg of Texas, LLC v. Adobe Systems, Inc., 2015 U.S. Dist. LEXIS 57715, *9 (N.D. Cal. May 1, 2015) ("Attorneys fees must be proportionate to the degree of success of the prevailing party.", citing Hensley).  Here Plaintiff achieved a very modest award of damages from the jury, amounting to less than 7.5 percent of the amount she had sought.  Accordingly, any award of attorneys fees should at best reflect the proportion represented by her success.

Recognizing the need for proportionality in the award of attorneys fees serves the related purpose of preventing Plaintiff from receiving a windfall that is not merited by the facts of the instant case.  Cf., e.g., Stokes v. Jerry James, Inc., 2023 U.S. Dist. LEXIS 5576, *6 (C.D. Cal. Jan. 10, 2023) ("an award of statutory damages of the magnitude sought by Plaintiff would, in these circumstances, provide a windfall to Plaintiff far in excess of the amount necessary to adequately punish and deter Defendants from engaging in future infringement"). Such concern should apply to attorneys fees as well, which in Stokes were strictly limited by local rule.

**2.     Plaintiff's refusal to engage in reasonable settlement discussions compounded the litigation and thus warrants the denial of fees.**

The Ninth Circuit has previously recognized that a prevailing party should not be awarded attorneys fees sought when they failed to pursue settlement opportunities, and approved a district court's reasoning "that Appellants should have aggressively pursued settlement at the early stages of the case and that counsel for Appellants unduly extended the duration of the litigation." Ingram v. Oroudijian, 647 F. 3d 925, 927-28 (9th Cir. 2011).  Other courts, in cases similar to the instant case, have likewise criticized litigants who seek statutory damages and attorneys fee awards by litigating in a manner intended to intimidate defendants, which is inconsistent with the goals of the Copyright Act.  See, e.g., ME2 Productions, Inc. v. Ahmed; 289 F. Supp. 3d 760, 764 (W.D. Va. 2018);

**DEFENDANT'S MEMORADUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS FEES**

<u>Oppenheimer v. Williams</u>, 2021 U.S. Dist. LEXIS 170057, **6-7 (D. S. Car. Sept. 8, 2021) (addressing claim of a prolific litigant photographer who files numerous lawsuits seeking infringement damages "not to be made whole, but rather as a primary or secondary revenue stream . . . with the hopes of coercing settlements.") That is exactly the behavior, including making excessive settlement demands to obtain more than fair value for the infringing use, for which Plaintiff--also a prolific litigant--and her attorneys seek to be rewarded via a large attorneys fee award.

### 3.    Other Considerations.

Other considerations relating to factors identified in <u>Hensley</u> (see fn 4, supra) weigh against an award of attorneys fees in the instant case.  This was a relatively simple, straightforward infringement case in which Defendant never disputed that it had displayed the infringing photograph without a license.  Its copyright misuse defense, which all recognize is not fully developed in copyright jurisprudence, was not meaningfully developed in this case, and disputes about it were focused on evidentiary issues raised by Plaintiff's motion to exclude Defendant's expert and her motion in limine.  Neither involved substantial time or effort on the part of the parties. See time records as shown on Plaintiff's time records, Exhibit 1 to Mr. DeSouza's Declaration.[21]

---

[21]  CopyCat Legal's time records show Mr. DeSouza having billed 6.8 hours for legal research and drafting Plaintiff's motion to exclude on 10/9/2023 and 2 hours reviewing the motion and attending the hearing on 12/21/2023.  A paralegal billed for .2 hours to file the motion.  Mr. DeSouza then recorded 6.4 hours in researching

1
2
3
4
5
6
7
8

Plaintiff's counsel performed competently, but the core issue in the case was a simple one, and despite Plaintiff's misleading misstatements to the contrary, there is no evidence that CopyCat Legal was prevented from accepting any other employment due to acceptance of this case, and in fact that firm represented and continues to represent the Harrington interests in numerous cases throughout the United States.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The fee arrangement between Plaintiff and her counsel was contingent, pursuant to a standing arrangement that had been freely entered by client and attorney, which provided benefits to each by assuring Plaintiff that she had limited responsibility to pay the costs of attorneys of her choice (and her husband before her), while the attorneys had a regular source of work with the opportunity to earn contingency fees.  There were no time limitations proposed by the client or required by the circumstances of the case that caused the lawyers to expend unusual resources, and there was nothing that could be characterized as "undesirable" about the undertaking of representation in the case.  For all these reasons, in conjunction with the discussion of the primary issues addressed in connection with Plaintiff's request for attorneys fees, nothing about the instant case justifies an award of a substantial amount of attorneys fees in favor of Plaintiff.

27
28

_____

and drafting the motion in limine on 2/12/2024 to exclude Defendant's trial exhibits, and a paralegal recorded .4 hours to file the motion and another different motion.

**DEFENDANT'S MEMORADUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS FEES**

### 4.    Fees should not be awarded for Plaintiff's fee application.

Plaintiff's fee application as filed includes fees for the preparation of the application, in the approximate amount of $4600 as of its submission [Doc. 201-2], which Plaintiff may ask to supplement when she responds to Defendant's opposition memorandum.  While fees for such applications can be awarded, here they should not be.  Her fee application itself was misleading both in respect to faulty assertions and to conscious oversights.  It was pointlessly redundant, citing a dozen or more cases where several would have easily sufficed.  See Plaintiff's Motion, pp. 16-20 and counsel's Declaration, pp.  6-8.  Accordingly the fees she seeks for preparing her fee application should be either denied or substantially reduced.

Plaintiff seeks to be awarded fees for filing and seeking to retain her case in New Mexico.  She seeks fees for litigation in New Mexico at rates for which she offers no support, and which in any event would be far less than the rates she asks this Court to apply in a lodestar calculation.  And she seeks fees by blaming Defendant for forcing this lawsuit to trial, when it is clear it was Plaintiff's actions that made trial necessary after Defendant attempted to settle the case and Plaintiff's unreasonable settlement demands scuttled any realistic possibility for settlement.  Along with all the reasons set out above for denying Plaintiff's application for fees, she should not be awarded fees for the preparation or further defense of her fee application.

**CONCLUSION**

Plaintiff has pursued the case against Defendant here, for the calculated purpose of obtaining an award of attorneys fees that is far disproportionate, readily foreseeable of the value of the case, and the result achieved.  Plaintiff seeks an award of fees that does not serve the purposes of the Copyright Act, and is not warranted by factors to be considered in determining an award of fees.  For these reason the Court should deny Plaintiff's application for fees; or if it determines any award is appropriate, the amount awarded should be reduced to reflect the contingency terms on which Plaintiff and her lawyers had agreed.

Respectfully submitted,

By: /s/ Jeffrey L. Squires
Jeffrey L. Squires
SQUIRES LEGAL COUNSEL, LLC
(NM Bar No.  143015)
P.O. Box 92845
Albuquerque, NM  87199
Telephone:  (505) 835-5500
Email:  jsquires@squireslegal.com

32

1
2
3
4
5
6

JEFFREY L. SQUIRES
(NM Bar No.  143015)
SQUIRES LEGAL COUNSEL, LLC
P.O. Box 92845
Albuquerque, NM  87199
Tel:  (505) 835-5500
Email:  jsquires@squireslegal.com
*Attorney for Defendant*

7
8
9

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

10  MAUREEN HARRINGTON

11            Plaintiff,

12      v.

13  DEEPAK DUGAR, M.D.,
14      A MEDICAL CORPORATION,

15            Defendant

16
17
18

Case No. 2:22-cv-08230-HDV-E

Next Event:  August 8, 2024
Hearing on Plaintiff's Motion for
    Attorneys Fees
Judge Hernan D. Vera

**PROOF OF SERVICE FOR
DEFENDANT'S MEMORADUM IN
OPPOSITION TO PLAINTIFF'S
MOTION FOR ATTORNEYS FEES**

19
20
21
22
23

I hereby certify that on this 16th day of July, 2024, a true and correct copy of

Defendant's Memorandum in Opposition to Plaintiff's Motion for Attorneys Fees,

along with this Proof of Service, was filed and served via the Court's CM/ECF

system to the following counsel of record.

24
25
26
27
28

Scott Edward Radcliffe
ALVES RADCLIFFE LLP
2377 Gold Meadow Way
Suite 100
Gold River, CA 95670
916-333-3375
Email: sradcliffe@alvesradcliffe.com

Daniel DeSouza
Lauren Hausman
COPYCAT LEGAL, PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone:  (877) 437-6228
Email:  daniel@copycatlegal.com
        lauren@copycatlegal.com

*/s/ Jeffrey L. Squires*

---

2